No. 03-540

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 345

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

MARK THEODORE LARSON,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
In and for the County of Pondera, Cause No. DC-01-22,
The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Kenneth R. Olson, Attorney at Law, Great Falls, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

        Chris Christensen, Pondera County Attorney, Conrad, Montana


        Submitted on Briefs:  June 1, 2004

        Decided:  December 7, 2004

Filed:

_____
             Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Defendant Mark Theodore Larson (Larson) was convicted by a jury in the Ninth Judicial District Court, Pondera County, on one count of negligent homicide, a felony, and one count each of the following misdemeanors: driving under the influence, speeding and failure to wear a seatbelt. Larson appeals his convictions.  We affirm.

¶2    The following issues are presented on appeal:

¶3    1. Whether the District Court erred in its ruling admitting the testimony of the State's blood alcohol expert.

¶4    2. Whether the District Court erred by granting the State's motion in limine to exclude evidence of the deceased victim's blood alcohol concentration.

¶5    3. Whether the District Court erred by granting the State's motion in limine to exclude evidence of the erection of new highway signs at the accident scene.

¶6    4. Whether the District Court properly instructed the jury on the definition of criminal negligence.

¶7    5. Whether the State provided sufficient evidence of impairment to support Larson's conviction for negligent homicide and driving under the influence.

¶8    6. Whether the State provided sufficient evidence to support Larson's conviction for exceeding the speed limit.

¶9    7. Whether Larson is entitled to a new trial under the doctrine of cumulative error.

### PROCEDURAL AND FACTUAL BACKGROUND

¶10    Larson was involved in a one-vehicle rollover November 11, 2001, on a frontage road north of Brady, Pondera County, that caused the death of Nicholas John Clare (Clare).  The

2

particular stretch of roadway where the accident occurred involved a severe curve, narrow shoulders and barrow ditches on both sides.  Around 3:30 a.m., Larson drove his pickup across the fog line and off the right shoulder of the road surface near the beginning of the severe left curve.  Larson pulled the pickup back onto the asphalt surface but overcorrected, sending the pickup across the highway and into the left barrow ditch.  Attempting to ride-out the ditch, the pickup rolled over two and a quarter times, ejecting the three occupants, Larson, Clare and Lynn Morgan (Morgan), who had not been wearing seatbelts.  Larson and Morgan escaped without serious injuries, but Clare sustained blunt-force trauma to the head and died as a result of his injuries.

¶11    Emergency medical technicians from the Pondera Medical Center were notified of the accident at 4:04 a.m. and arrived at the crash scene at approximately 4:16 a.m. The EMTs treated the occupants at the scene, declaring Clare dead on arrival.  Having determined Clare deceased, the paramedics performed aid on Larson whom they feared had a spinal fracture. The paramedics who treated Larson at the scene and in the ambulance smelled alcohol on his breath, and Larson admitted to one of the EMTs he had been drinking.   Montana Highway Patrol Officer Noel Durham, who received Larson at the hospital, also stated he smelled alcohol on Larson's breath.

¶12    Montana Highway Patrol Officer, Jerril Ren, was notified of the accident at approximately 4:04 a.m and arrived at the scene at about 4:40 a.m.  When he arrived at the scene, he found Clare's body next to a green and silver full-sized Chevrolet pickup resting on the driver's side of the vehicle in the east ditch facing southwest.  Officer Ren noticed skid marks at the accident scene indicating Larson's vehicle had drifted off the right side of

3

the roadway, overcorrected and continued across the highway into the east ditch. After taking pictures at the scene, Officer Ren departed the crash scene and proceeded to the Pondera Medical Center.

¶13 Officer Ren spoke with Larson at the Pondera Medical Center. When asked by Officer Ren, Larson admitted he and the others had been drinking at various residences and bars as well as in his vehicle in the Conrad and Dutton area earlier that evening. Larson admitted he had consumed between ten and twelve drinks during the evening, including beer and whiskey. Larson also recounted how he had been momentarily distracted during a conversation with Clare and drifted off the right side of the roadway. Larson indicated he tried to steer the vehicle back onto the roadway before overcorrecting and traversing across the roadway and entering the ditch on the other side. Attempting to ride-out the ditch, Larson stated he turned the wheels towards the skid when the vehicle flipped. A sample of Larson's blood was drawn at 5:43 a.m. and sent to the crime lab for analysis. The crime lab reported Larson's blood alcohol concentration was 0.12%.

¶14 Officers Ren and Durham investigated the cause of the wreck and took measurements of the three tire marks on the highway in order to estimate Larson's speed. The officers arrived at speed estimates of 84 to 89 mph at the time Larson's pickup crashed. The estimates were later confirmed by Sergeant Brad Sangray of the Montana Highway Patrol, who determined through his own investigation the pickup's estimated speed was 83 mph. This speed was also confirmed, though later recanted at trial, by Morgan who told officers at the accident scene he believed Larson was traveling between 80 to 85 mph at the time of the wreck. Sergeant Sangray determined the accident was caused by speed, inattentive

4

driving, alcohol influence and failure to wear seatbelts.

¶15 Estimates at trial by Larson's expert, Dr. Denmen Lee, indicated Larson's speed at the time of the accident was between 63 to 71 mph with a standard deviation of plus or minus 4 mph. Dr. Lee disputed the officer's calculations, in particular, alleging they only used three skid marks when the prevailing science required four. The officers' estimates, Dr. Lee testified, were too high and did not reflect Larson's speed accurately.

¶16 The State filed an Information on November 27, 2001, charging Larson with one count of negligent homicide, a felony, pursuant to § 45-5-104, MCA; one count of driving under the influence of alcohol, a misdemeanor, pursuant to § 61-8-401, MCA; one count of failing to wear a seatbelt, a misdemeanor, pursuant to § 61-13-103, MCA; and one count of speeding, a misdemeanor, pursuant to § 61-8-303(1)(b), MCA.

¶17 Prior to trial, the State filed motions in limine seeking to exclude evidence of other traffic accidents near the same location; evidence of the erection of new highway signs at the location of the accident; and evidence of Clare's blood alcohol concentration. Similarly, Larson filed a motion in limine to exclude any evidence involving the "retrograde extrapolation" of his blood alcohol concentration test administered after the accident. Retrograde extrapolation is the use of a test administered after an event to determine a person's blood alcohol at an earlier time by adding on the average metabolic destruction of alcohol during the period of delay.

¶18 On March 14, 2003, the District Court issued its ruling on the motions in limine. The District Court denied the State's request to exclude evidence of other traffic accidents but granted the State's request to prohibit evidence of new highway signs unless offered to rebut

5

or refute evidence from the State that it did not consider the site of the accident to be dangerous. The District Court also granted the State's request to exclude evidence of Clare's blood alcohol as well as Larson's request to exclude any evidence regarding the retrograde extrapolation results of the blood alcohol concentration test.

¶19 The trial began on March 17, 2003. The State's evidence at trial showed during the evening hours of November 10 and early morning hours of November 11, 2001, Larson and two college friends, Morgan and Clare, were drinking in his vehicle and in various bars and residences in the Conrad and Dutton area.

¶20 At about 3:30 a.m., Larson was driving his pickup at a high rate of speed south on the frontage road between Conrad and Brady when it veered off the right shoulder of the road surface near the beginning of a left curve. Larson pulled the pickup back onto the asphalt surface but overcorrected, sending his pickup across the highway and into the ditch on the left side of the highway. At that point, the car flipped multiple times, ejecting all three passengers, who were not wearing seatbelts.

¶21 The State's expert, Lynn Kurtz, of the state crime lab, testified analysis of Larson's blood sample taken three hours after the accident showed a blood alcohol concentration of 0.12%. Kurtz also testified concerning the effects of alcohol on an individual's ability to operate a motor vehicle, stating alcohol impairs an individual's ability to drive.

¶22 Over Larson's objections, Kurtz also discussed how an individual processes alcohol in three phases, describing the intervals as "alcohol absorption phase," "peak alcohol phase," and "elimination phase." When posed with a hypothetical question about which of the three phases a person would be in at the time of a BAC test, assuming the person quit drinking at

6

2:00 a.m., was in a wreck at 3:30 a.m., and was tested at 5:43 a.m, Kurtz testified an individual in such a scenario would be in the elimination phase, having totally absorbed the alcohol into his or her system earlier. Moreover, Kurtz stated a person's peak alcohol level would be reached sometime within a half hour to an hour and a half after the person stopped consuming alcohol. Kurtz refused to ascribe a specific number to Larson's blood alcohol concentration at the time of the accident.

¶23 On cross-examination, Kurtz agreed with Larson's counsel it was not scientifically possible to state what Larson's blood alcohol levels would have been two hours before the test. Kurtz stated using the results of a delayed test to determine a person's blood alcohol at an earlier time by adding on the average metabolic destruction of alcohol during the period of delay was against state crime lab policy. Kurtz testified he did not engage in this retrograde extrapolation but, given the time intervals, he could state Larson would have been in the elimination phase at 5:43 a.m., nearly four hours after the last consumption of alcohol.

¶24 At the conclusion of the trial but before deliberations, the parties submitted proposed jury instructions to the District Court. During the settling of jury instructions, Larson objected to the State's Instruction 19 which defined criminal negligence as follows:

> A person acts negligently with respect to the death of a human being or to a circumstance when an act is done with a conscious disregard of the risk that death of a human being will occur or that the circumstance exists or when the person disregards a risk of causing the death of another human being which the person should be aware that the result will occur or that the circumstance exists.
>
> The risk must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. 'Gross deviation' means a deviation that is considerably greater than lack of ordinary care.

7

Larson objected to the instruction on the grounds the word "consciously" should have been inserted before the word "disregards" in defining criminal negligence. The court rejected Larson's objection, stating, "I believe the Court's Instruction is the definition, as provided by the Statute."

¶25 After its deliberations, the jury returned verdicts of guilty on all counts. Judgment was entered on April 25, 2003, convicting Larson to seven years in prison, all suspended under certain terms and conditions. Larson appeals.

### ISSUE ONE

¶26 **Whether the District Court erred in its ruling admitting the testimony of the State's blood alcohol expert.**

¶27 Larson argues the District Court abused its discretion when it permitted evidence concerning his blood alcohol at trial. Larson maintains the District Court violated its own order by allowing the State's expert to offer an opinion Larson, at the time his blood draw was taken, had reached and passed "peak alcohol." Larson contends all evidence involving retrograde extrapolation was prejudicial, against the State Crime Lab's own policy and in direct contravention of the District Court's motion in limine.

¶28 The State counters its expert did not engage in back extrapolation because he did not attempt to use the results of the delayed blood draw to specifically determine Larson's blood alcohol at an earlier time. The State maintains its expert stated only that, given the time intervals, Larson would have been in the elimination phase after the accident.

¶29 Issues concerning the admissibility of evidence are within the discretion of the district court. *Cottrell v. Burlington Northern R. Co.* (1993), 261 Mont. 296, 301, 863 P.2d 381,

8

384. "The trial court is vested with great latitude in ruling on the admissibility of expert testimony." *Cash v. Otis Elevator Co.* (1984), 210 Mont. 319, 332, 684 P.2d 1041, 1048. A district court has broad discretion to determine whether evidence is relevant and admissible, and absent an abuse of discretion, this Court will not overturn that court's ruling. *State v. Hamilton*, 2002 MT 263, ¶ 10, 312 Mont. 249, ¶ 10, 59 P.3d 387, ¶ 10. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *State v. Brasda*, 2003 MT 374, ¶ 14, 319 Mont. 146, ¶ 14, 82 P.3d 922, ¶ 14.

¶30 We conclude the District Court did not abuse its discretion when it admitted testimony by the State's expert witness regarding Larson's blood alcohol. The District Court correctly recognized the distinction between "elimination phase" testimony and "retrograde extrapolation" testimony, admitting the former and prohibiting the latter. Retrograde extrapolation is a method of estimating a person's blood alcohol level at a specified time by using the person's known blood alcohol content at a later time. Kurtz did not assign a definitive number to Larson's blood alcohol at the time of the accident, but instead stated his opinion Larson would have reached the peak alcohol phase earlier in the evening and been in the elimination phase at the time of the blood draw. Furthermore, the results of the blood test, which indicated Larson's blood alcohol was at 0.12%, when considered in combination with Kurtz's foundational testimony that an individual's blood alcohol usually peaks within a half hour to an hour and a half following consumption, tended to make it more probable Larson was in the elimination phase at the time the blood test was taken. Although this necessarily assumes his alcohol levels were higher before the time the test was conducted,

9

Kurtz did not engage in retrograde extrapolation. That is, Kurtz did not give an opinion as to Larson's blood alcohol level at the time of the accident. By failing to engage in retrograde extrapolation, Kurtz did not violate state crime lab policy. Accordingly, we hold the District Court did not abuse its discretion when it admitted Kurtz's testimony regarding Larson's blood alcohol.

## ISSUE TWO

¶31 **Whether the District Court erred by granting the State's motion in limine to exclude evidence of the deceased victim's blood alcohol concentration.**

¶32 Larson argues the District Court erred when it prohibited Larson from presenting evidence of Clare's blood alcohol at trial. Larson maintains evidence comparing Clare's blood alcohol at the time of the accident with Larson's two hours after the crash would have supported prospective testimony about the drinking activities on the evening of the accident as well as countered the State's expert witness testimony regarding Larson's alleged impairment.

¶33 The State counters Clare's blood alcohol concentration level was not relevant or probative of Larson's blood alcohol or the extent of Larson's impairment at the time of the accident. The State maintains testimony at trial did not suggest Larson and Clare consumed alcohol in exactly the same amounts and times nor did it show similarities between the men's body weight, stomach contents, and elimination rate.

¶34 The authority to grant or deny a motion in limine "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial." *State v. Krause*, 2002 MT 63, ¶ 32, 309 Mont. 174, ¶ 32, 44 P.3d 493, ¶ 32

10

(citations omitted). Therefore, we will not overturn a district court's grant or denial of a motion in limine absent an abuse of discretion. *Krause*, ¶ 32. The test for abuse of discretion is whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *State v. Richardson*, 2000 MT 72, ¶ 24, 299 Mont. 102, ¶ 24, 997 P.2d 786, ¶ 24.

¶35 Rule 401, M.R.Evid., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402, M.R.Evid., provides that relevant evidence is generally admissible. However, Rule 403, M.R.Evid., creates an exception to Rule 402's general admissibility standard, providing, "[e]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

¶36 We conclude the District Court did not abuse its discretion when it granted the State's motion in limine to exclude evidence of Clare's blood alcohol concentration. Although the District Court's order granting the State's motion did not set forth its reasons for excluding evidence of Clare's blood alcohol level, it presumably agreed with the State the blood alcohol concentration results and evidence of Clare's alcohol consumption were irrelevant. Indeed, although Clare's autopsy results indicated his blood alcohol was less than 0.10%, it would not have changed following the collision, as he died instantaneously. Further, there is no evidence to suggest the two men consumed alcohol in exactly the same amounts and at the same times. As such, even if the evidence had probative value, the probative value would be outweighed by the unfair prejudice resulting from its admission. Clare's actions

11

and activities were not on trial. Finally, this Court has determined the State's expert did not engage in retrograde extrapolation, thus, evidence of Clare's blood alcohol concentration is not necessary to counter Kurtz's testimony regarding Larson's impairment. Accordingly, we hold the District Court did not abuse its discretion when it granted the State's motion to exclude Clare's blood alcohol concentration results.

## ISSUE THREE

¶37 **Whether the District Court erred by granting the State's motion in limine to exclude evidence of the erection of new highway signs at the accident scene.**

¶38 Larson argues the District Court erred when it prohibited him from producing evidence at trial indicating new road signs had been erected at the accident scene following the crash. Larson maintains the absence of adequate warning signs ahead of the curve where the accident took place established the roadway's danger and partially vitiated his negligence. Further, the evidence of new signage was not offered to prove negligence or culpable conduct of the State, but rather to show the roadway was more dangerous because of the absence of proper signage.

¶39 The State counters the District Court did not abuse its discretion by excluding evidence of highway signs erected at the scene following the accident. The State maintains the District Court's order prohibited evidence of new highway signs unless offered to rebut or refute evidence from the State that it did not consider the site of the accident to be dangerous. The State argues it conceded the roadway presented a risk to an inattentive driver and thus evidence of signage was properly prohibited.

¶40 As stated above, the authority to grant or deny a motion in limine "rests in the inherent

12

power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial." *Krause*, ¶ 32 (citations omitted). Therefore, we will not overturn a district court's grant or denial of a motion in limine absent an abuse of discretion. *Krause*, ¶ 32. The test for abuse of discretion is whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Richardson*, ¶ 24.

¶41 We conclude the District Court did not abuse its discretion when it granted the State's motion in limine to exclude evidence of highway signs erected at the scene following the accident. The District Court's order stated evidence of highway signs would only be admitted if offered to rebut or refute testimony or evidence from the State it did not consider the site of the accident to be dangerous. In this case, the State did not dispute, either by direct presentation of evidence or in argument, the highway at the location of the crash presented a risk to an inattentive driver. Although Larson elicited on cross-examination an admission from Officer Durham he thought the road was not dangerous, the District Court indicated to Larson its reluctance to allow further testimony into Durham's opinion on a topic which the court had prohibited. Further, Larson was permitted to fully present his theory the frontage road in question was a dangerous highway, chronicling a litany of other motor vehicle accidents, including injuries and fatalities that occurred near the accident site. Evidence of any changes in the signage subsequent to the accident would have substantiated proof already offered at trial. Accordingly, we hold the District Court did not abuse its discretion when it granted the State's motion to exclude evidence of signs erected on the highway after the accident.

13

¶42 **Whether the District Court properly instructed the jury on the definition of criminal negligence.**

¶43 Larson argues the District Court erred when it lowered the standard of proof required under the statutory scheme defining criminal negligence. Larson maintains the instruction for criminal negligence given to the jury should have included the word "consciously" as it related to the individual's disregard for a known risk. Larson contends by omitting the modifying adverb "consciously" before the word "disregards," the District Court lowered the standard of proof as required under the Criminal Code.

¶44 The State counters the District Court properly instructed the jury on the definition of criminal negligence. The State asserts the existing statutory definition given to the jury provided an adequate means of distinguishing criminal negligence from ordinary negligence. The State contends the instruction given to the jury made clear the standard on which to judge Larson's disregard of the risk involved as well as his gross deviation from a reasonable standard of conduct.

¶45 A person commits negligent homicide if the person negligently causes the death of another human being. Section 45-5-104, MCA. A person acts negligently with respect to a result or circumstance, "when the person consciously disregards a risk that the result will occur or that the circumstance exists or when the person disregards a risk of which the person should be aware that the result will occur or the circumstance exists." Section 45-2-101(42), MCA. Further, the risk "must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the

actor's situation." The term "gross deviation" is defined by the statute as meaning "a deviation that is considerably greater than lack of ordinary care."

¶46    This Court has previously decided mental state is not at issue in negligent homicide cases. *State v. Gould* (1985), 216 Mont. 455, 477, 704 P.2d 20, 34. In *Gould*, we held the defendant's proposed instruction referred improperly to the necessity of acting with the mental state of "consciously" as an element of the offense of negligent homicide. We deemed such instruction improper. Similarly, Larson's proposed instruction included the term "consciously," as used in § 45-2-101(42), MCA, to define criminal negligence. Unlike deliberate homicide however, which requires the offense be committed purposely or knowingly, negligent homicide does not require such purpose and knowledge. Negligent homicide only requires a gross deviation from a reasonable standard of care. *State v. Kirkaldie* (1978), 179 Mont. 283, 292, 587 P.2d 1298, 1304. Further, we have held criminal negligence can arise as a result of intoxication. *Kirkaldie*, 179 Mont. at 292, 587 P.2d at 1304. Larson's mental state at the time he was driving his car is not at issue. Instead, the issue is whether the driving of a car while intoxicated was a gross deviation from the standard of reasonable care. It is difficult to imagine that conduct, which included drinking both beer and whiskey over many hours, disregarding the prevailing notion that drinking and driving is dangerous, and then getting behind the wheel of a vehicle and driving down an isolated county road at a speed in excess of the speed limit, could not be classed as a gross deviation that is considerably greater than the lack of ordinary care.

¶47    The State's proposed instruction stated, in part:

A person acts negligently with respect to the death of a human being when an

15

act is done with conscious disregard of the risk that death of a human occur, or when the person disregards a risk which the person should be aware that the death of a human being will occur.

Larson objected to this instruction on the ground the Court was effectively lowering the standard of proof as required by the framers of the criminal code. In answer to Larson's objection on the proposed instruction, the District Court stated, "I believe the Court's Instruction is the definition, as provided by the Statute." We agree.

¶48    We hold the jury was adequately instructed on negligence and the elements of the offense charged. Under the given instructions, if the jury believed Larson's account of the accident, they could have found in his favor. However, it was the jury's duty to determine which account of the accident, the State's or Larson's, they believed more credible and worthy of belief. *State v. Lewis* (1976), 169 Mont. 290, 294, 546 P.2d 518, 520. Where the jury is adequately instructed, no error occurs in refusing a proposed instruction which is already covered. *Kirkaldie*, 179 Mont. at 293, 587 P.2d at 1304. Here, the jury was fully instructed and Larson had a full opportunity to argue the merits of his defense. Accordingly, we hold the District Court properly instructed the jury on the definition of criminal negligence.

## ISSUE FIVE

¶49    **Whether the State provided sufficient evidence of impairment to support Larson's conviction for negligent homicide and driving under the influence.**

¶50    Larson argues the State's evidence at trial was insufficient to support the jury's determination he was impaired by alcohol at the time of the accident. Larson maintains the inference of impairment resulting from his 0.12% blood alcohol concentration was rebutted

16

by other evidence indicating the accident was caused by a momentary lapse of attention while driving on a dangerous road.

¶51 The State responds the evidence presented at trial of Larson's impairment was sufficient to support his negligent homicide and driving under the influence convictions. The State maintains it presented evidence including Larson's consumption of alcohol, the high rate of speed he was driving, testimony of witnesses indicating he was intoxicated as well as his blood alcohol concentration of 0.12% which sufficiently supported the jury's verdict.

¶52 This Court reviews a question concerning the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. York*, 2003 MT 349, ¶ 10, 318 Mont. 511, ¶ 10, 81 P.3d 1277, ¶ 10. We review the jury's verdict only to determine whether it is supported by sufficient evidence, not to determine whether there was sufficient evidence to support a different verdict. *State v. Sattler*, 1998 MT 57, ¶ 60, 288 Mont. 79, ¶ 60, 956 P.2d 54, ¶ 60.

¶53 "The credibility of witnesses and the weight given to their testimony are determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal." *State v. Bauer*, 2002 MT 7, ¶ 15, 308 Mont. 99, ¶ 15, 39 P.3d 689, ¶ 15. Only in those rare cases where the story told is so inherently improbable or is so nullified by material self-contradiction that no fair-minded person could believe it may we say no firm foundation exists for the verdict based on it. *Bauer*, ¶ 15.

¶54 We conclude the State provided sufficient evidence of Larson's impairment to support Larson's conviction for negligent homicide and driving under the influence. Here, the State

17

presented evidence Larson drank a substantial amount of alcohol during the evening and morning hours before the accident. Further, Larson admitted to EMTs and officers at the hospital he had consumed a considerable amount of alcohol. The State also showed Larson drove his pickup at a high rate of speed off the shoulder of the highway, causing the pickup to roll over and eject all three passengers. The State's expert witness testified the driving ability of anyone with a blood alcohol concentration of 0.08% or more is impaired or diminished. The jury in this case also heard testimony Larson's blood alcohol concentration was 0.12% two hours after the accident and four hours after he had stopped drinking.

¶55 We cannot know precisely why or how the jury reached its decision to convict Larson. We only know Larson presented his theory that other mitigating factors may have caused the accident, and the jury apparently rejected it. We hold, therefore, sufficient evidence exists to support Larson's convictions.

## ISSUE SIX

¶56 **Whether the State provided sufficient evidence to support Larson's conviction for exceeding the speed limit.**

¶57 Larson argues the State failed to present sufficient evidence to support a conviction of the offense of speeding. Larson maintains his own estimate at the time of the accident was 60 to 65 mph which was confirmed by Morgan at trial and bolstered by his expert witness who calculated a speed between 63 and 71 mph. Larson contends the higher estimates of the investigating officers were based upon flawed measurements which failed to prove, beyond a reasonable doubt, his speed was excessive.

¶58 The State counters the evidence presented at trial of Larson's speed was sufficient to

18

support the jury's verdict. The State contends the jury had sufficient evidence from two police accident reconstructionists as well as Morgan's statements shortly after the accident to conclude Larson violated the speed restriction for nighttime driving on the frontage road.

¶59 As discussed above, the standard of review for a claim of insufficiency of the evidence is whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the offense beyond a reasonable doubt. *York*, ¶ 10. Further, credibility of witnesses and the weight to be given to their testimony are to be determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal. *State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. The trier of fact is not required to blindly accept the defendant's version of the facts. *State v. Brogan* (1993), 261 Mont. 79, 87, 862 P.2d 19, 24. Moreover, "[i]f events are capable of different interpretations, the trier of fact determines which is most reasonable." *Brogan*, 261 Mont. at 87, 862 P.2d at 24.

¶60 The jury was presented with evidence the nighttime speed limit for a non-interstate public highway in Montana is 65 mph. Larson's speed was estimated to be between 84 to 89 mph or 63 to 71 mph by the State and Larson's experts respectively. Further, the jury heard Morgan contradict his earlier statements to police he believed Larson was traveling between 80 to 85 mph on the night of the accident.

¶61 Again, we cannot know precisely why or how the jury reached its decision to convict Larson. Based on the evidence presented to the jury in this case however, a rational trier of fact could have found Larson had been driving in excess of the posted speed limit. We therefore affirm Larson's conviction on that count.

## ISSUE SEVEN

¶62 **Whether Larson is entitled to a new trial under the doctrine of cumulative error.**

¶63    Larson argues he was denied a fair trial under the doctrine of cumulative error. Larson contends he was denied a fair trial and is therefore entitled to a new trial due to the cumulative errors he has argued in this appeal.

¶64    The State counters the District Court's rulings fall well within the broad discretion of the court to determine the relevance and admissibility of evidence to instruct the jury.

¶65    The doctrine of cumulative error requires reversal of a conviction where a number of errors, taken together, prejudiced a defendant's right to a fair trial. *State v. Ottwell* (1989), 239 Mont. 150, 157, 779 P.2d 500, 504. Under this doctrine, once such accumulated errors are identified as having prejudiced a defendant's right to a fair trial, reversal is required. *Enright*, ¶ 34. However, the existence of prejudice must be established by the defendant, as "mere allegations of error without proof of prejudice are inadequate to satisfy the doctrine." *State v. Campbell* (1990), 241 Mont. 323, 329, 787 P.2d 329, 333.

¶66    We find no grounds to apply the doctrine of cumulative error in this case. This Court has carefully reviewed the issues presented by appellants. We find no prejudice in this case that would warrant reversal. Further, we find no abuse of judicial discretion in the District Court's evidentiary rulings. Moreover, we hold, there was sufficient evidence for the jury to convict on the charges against Larson. Finally, inasmuch as none of the evidentiary rulings cited by Larson was error, this Court finds no grounds to apply the doctrine of cumulative error.

¶67    For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER