No. 04-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 171

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

LENNEA PRECIOUS KEARNEY,

        Defendant and Appellant.


APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2003-0285,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Gary E. Wilcox, Michael Law Firm, Billings, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Ilka Becker,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, County Attorney; Scott Twito, Deputy County
Attorney, Billings, Montana


            Submitted on Briefs:  August 4, 2004

            Decided:  July 5, 2005


Filed:


_____
            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Lennea Precious Kearney (Kearney) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, sentencing her to five years imprisonment upon her conviction by jury of assault with a weapon upon Sandra Stuart (Stuart). We affirm.

¶2 The following issues are dispositive on appeal:

¶3 Did the District Court abuse its discretion by admitting photographs of Stuart's stab wounds?

¶4 Did Kearney's trial counsel render ineffective assistance by calling Dr. Bentzel as a witness?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Kearney and Stuart met in Pennsylvania, became romantically involved with each other, and moved to Montana together. Shortly after the move, the romantic relationship soured and eventually ended. In the early morning hours of April 6, 2003, approximately three weeks after the relationship ended, Stuart returned to their home in Billings around 1:30 a.m. after meeting with a friend. Kearney and two neighborhood teenagers were at the residence when Stuart returned.

¶6 Kearney and Stuart exchanged heated remarks, one of which angered Kearney, who then punched Stuart. Stuart then threw Kearney into a chair and held Kearney down by her shoulders. Kearney then began scratching and kicking Stuart as she was being held down. Stuart testified that she was telling Kearney to calm down. However, Kearney testified that

2

Stuart began to choke her. The two teenagers left during the melee. Stuart eventually let go of Kearney and sat down in a love seat.

¶7    Stuart and Kearney presented differing depictions of what occurred thereafter, which led to Stuart's stabbing. Stuart testified that Kearney went into the kitchen, returned with a knife, and said, "don't close your eyes tonight, I'm going to kill you." Stuart testified that she then walked toward Kearney, told her to give her the knife, after which Kearney repeated the threat that she intended to kill Stuart. Stuart claims she placed her hand on Kearney's hand, and that Kearney then pulled the knife away and started to jab Stuart's arm with it. Stuart testified that she turned to walk away and that Kearney then stabbed her twice in the back. Stuart claimed she then quickly turned around and Kearney stabbed her in the shoulder and neck area.

¶8    Kearney testified that Stuart cornered her in the kitchen and repeatedly said, "you're going to have to kill me, or I'm going to kill you." Kearney claims that Stuart would not let her out of the kitchen and repeatedly pushed Kearney into the counter top. Kearney testified that she was afraid for her life and claimed that after she asked Stuart to let her pass, she noticed blood on the tip of the knife. Thereafter, Stuart showed Kearney her sweater and said, "that's what I was waiting for."

¶9    Stuart called 911 and reported that Kearney had stabbed her. Several officers arrived at the home, and eventually handcuffed Kearney, who was being uncooperative, and transported her to jail. Deputy Sheriff Roger Bodine testified that Stuart's sweater was saturated in blood, and Deputy Mickey Eckart testified that he placed a towel on one of

3

Stuart's wounds which was bleeding profusely. Thereafter, Stuart was taken to Saint Vincent's Hospital in Billings for treatment of the wounds, and Doctor George Bentzel (Dr. Bentzel) determined that surgery was required to control the bleeding in a laceration in Stuart's neck area.

¶10 On April 9, 2003, Kearney was charged by Information of assault with a weapon, a felony. The State's trial brief advised the District Court that it intended to introduce numerous photographs, including photos of Stuart's injuries. On July 31, 2003, Kearney filed a motion *in limine* to exclude the photographs from being introduced into evidence because "their prejudicial effect outweighs their probative value." The jury trial began on August 4, 2003, and on the following day, the jury found Kearney guilty of assault with a weapon. On October 9, 2003, Kearney was sentenced to the Department of Corrections for five years.

¶11 On November 25, 2003, Kearney filed a notice of appeal and obtained an order appointing Gary Wilcox as counsel for purposes of appeal–the Public Defender's Office was removed as counsel.

**STANDARD OF REVIEW**

¶12 In general, district courts have broad discretion in determining the admissibility of evidence, and will not be overturned absent an abuse of discretion. *State v. Larson*, 2004 MT 345, ¶ 29, 324 Mont. 310, ¶ 29, 103 P.3d 524, ¶ 29. The test for abuse of discretion is whether the trial court acted arbitrarily or exceeded the bounds of reason resulting in

4

substantial injustice. *State v. Brasda*, 2003 MT 374, ¶ 14, 319 Mont. 146, ¶ 14, 82 P.3d 922, ¶ 14.

¶13    Ineffective assistance of counsel claims are analyzed under the two-prong test adopted from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, which includes: (1) that the defendant bears the burden of showing that his counsel's performance was deficient or fell below the objective standard of reasonableness; and (2) the defendant must show that he was prejudiced by counsel's deficient performance. *State v. Lucero*, 2004 MT 248, ¶ 15, 323 Mont. 42, ¶ 15, 97 P.3d 1106, ¶ 15.  Prejudice is established when the defendant shows reasonable probability that the result of the proceedings would have been different, but for counsel's unprofessional errors. *State v. Hagen*, 2002 MT 190, ¶ 18, 311 Mont. 117, ¶ 18, 53 P.3d 885, ¶ 18.

## DISCUSSION

¶14    **Did the District Court abuse its discretion by admitting photographs of Stuart's stab wounds?**

¶15    Kearney contends that the District Court erred in admitting the photographs of Stuart's stab wounds because "bodily injury" was conceded by the parties and was therefore not at issue in the trial.  Kearney argues that the photographs were unnecessary to prove the bodily injury element of assault with a weapon, and instead prejudicially affected the jury. Conversely, the State claims that Kearney did not concede to Stuart's injuries, and therefore, the photos were relevant to establish the element of bodily injury beyond a reasonable doubt. The State also argues that Kearney provided no transcript of the pre-trial hearing in which

the issue was argued, failed to provide the photographs on appeal, has not set forth the prejudice she suffered as a result of the photos, and is therefore procedurally barred regardless of whether she conceded to Stuart's injuries.

¶16 This Court will not consider unsupported arguments, "locate authorities or formulate arguments for a party in support of positions taken on appeal." *State v. Flowers*, 2004 MT 37, ¶ 44, 320 Mont. 49, ¶ 44, 86 P.3d 3, ¶ 44 (citations omitted). Additionally, Rule 23(a)(4), M.R.App.P., requires that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." While Kearney contends the photographs were prejudicial and unnecessary to prove the injury element of the case, she offers no explanation as to how or why the photographs prejudiced her case, nor does she explain how the District Court's ruling to include the photographs constituted an abuse of discretion that exceeded the bounds of reason resulting in substantial injustice. Moreover, the transcripts and photographs were not provided on appeal, further inhibiting our review. Because we will not consider unsupported arguments on appeal, we need not further address this issue.

¶17 **Did Kearney's trial counsel render ineffective assistance by calling Dr. Bentzel as a witness?**

¶18 Kearney argues that her trial counsel had "no legitimate reason" to call Stuart's emergency room physician, Dr. Bentzel, as a witness since the existence of the injuries were not in dispute. Kearney contends that where existence of the injury is not in dispute, there

must be "some other logical, strategical, reasonable" basis for that decision, and claims there was no such "other" reason applicable here. Kearney acknowledges the fact that the record is silent as to why her trial counsel called the witness, but nevertheless urges this Court to conclude that there is no justification for counsel's decision.

¶19 The State responds that, even assuming Kearney's counsel was ineffective, she failed to argue how Dr. Bentzel's testimony prejudiced her case. The State argues that Dr. Bentzel's testimony was merely "cumulative to the evidence" that had already been presented by the State which included photographs of Stuart's injuries, testimony from Stuart that Kearney had stabbed her, and testimony from Deputy Jeff Nedens as to Stuart's injuries. Consequently, the State asserts that Kearney was not prejudiced by Dr. Bentzel's testimony, and that her ineffective assistance of counsel argument is without merit.

¶20 We have previously held that the two prongs of the *Strickland* test need not be addressed "in the same order . . . if the defendant makes an insufficient showing on one . . . ." *Dawson v. State,* 2000 MT 219, ¶ 21, 301 Mont. 135, ¶ 21, 10 P.3d 49, ¶ 21 (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699). Additionally, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Dawson,* ¶ 21 (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699).

¶21 The record here does not demonstrate why Kearney's trial counsel decided to call Dr. Bentzel as a witness. However, even assuming that this was a decision that fell below the standard of reasonableness, we are unable to conclude that, but for counsel's unprofessional

7

errors, the outcome of the proceedings would be different. *Hagen*, ¶ 18. After review of the record, it is clear that based upon the admission of the photographs, testimony from various deputies at the scene as to the Stuart's injuries, and testimony from Stuart that Kearney stabbed her, the testimony provided by Dr. Bentzel was merely cumulative and therefore not prejudicial. Thus, we conclude that Kearney's trial counsel did not render ineffective assistance pursuant to the second prong of the *Strickland* test.

¶22    Affirmed.

/S/ JIM RICE

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART

8