DA 22-0664

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 254

FILED

11/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0664

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TANYA TWOTEETH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2021-187
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender, Jennifer Penaherrera, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  June 26, 2024

Decided:  November 6, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Tanya Twoteeth appeals from an August 15, 2022 jury conviction in the First Judicial District Court. The jury found her guilty of Tampering with Witnesses and Informants, in violation of § 45-7-206(1)(a) or (b), MCA. We affirm.

¶2 We restate the issues on appeal as follows:

> *Issue One: Whether the District Court erred in admitting an out-of-court statement as non-hearsay.*

> *Issue Two: Whether there was sufficient evidence for a jury to convict Tanya of Tampering with Witnesses or Informants.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Detective Chad Lawrence was investigating a series of car thefts from dealerships. One of his suspects was Desirae Lucier, Tanya's daughter. On November 13, 2018, police recovered a stolen Chrysler 300. Inside the vehicle, Lawrence found a notebook belonging to Desirae that had her name and handwriting inside. Lawrence noted a police report from the previous day concerning that same vehicle. Roberta Twoteeth, Desirae's aunt (and Tanya's sister-in-law), had called police and filed a report about the car trespassing on her property. The vehicle was gone by the time police arrived, but Roberta identified Desirae as one of the occupants of the stolen vehicle, and a cellphone had been left behind.[1] The police recovered this cellphone, which was Desirae's. The police released the phone to Tanya, who picked it up at the station.

---

[1] Lawrence later watched the bodycam footage of this conversation and confirmed it matched what was in the report.

¶4　　The State charged Desirae with multiple charges, including one that stemmed from the stolen Chrysler 300.  Desirae's criminal trial was set to begin on or about October 22, 2019.  Desirae placed two calls to her mother Tanya in the weeks before her trial, one on October 14 and one on October 16.  A recording of the calls was played to the jury in this case.   The first call between Desirae and Tanya began with Desirae discussing a conversation she recently had with her lawyer about the multiple charges she faced.  Desirae discussed that she and her lawyer felt good about getting some of the charges dismissed or dropped down to a misdemeanor.  However, her lawyer did not feel as confident about the charge stemming from the stolen Chrysler 300:

> [Desirae]: [My lawyer] said the only [charge] that he's not sure about or worried about is the one with Berta [(a nickname for Roberta)].  So – is Berta still over there?**
>
> [Tanya]: Huh-uh.
>
> [Desirae]: So –
>
> [Tanya]: But with Berta?
>
> [Desirae]: – is she gonna – well yeah, she –
>
> [Tanya]: I don't think you have anything to worry about my girl.  Berta knows how (inaudible).
>
> [Desirae]: Well, yeah, I just wanna know she's gonna like – is she gonna be a witness or like what – or is she gonna –
>
> [Tanya]: I'll call her and ask her.
>
> [Desirae]: Call her, yeah.
>
> [Tanya]: I will. . . . But, what was she a witness for?
>
> [Desirae]: Well she called the cops on me.

3

[Tanya]: Um – when um – when you guys were at the house?

[Desirae]: Yeah, she called the cops and – yeah – so –

[Tanya]: And [when] I had to go – go and retrieve your phone at the cop shop?

[Desirae]: Yeah, mom.

[Tanya]: Okay, okay.  Okay – I really don't think she's going to.  I'll – I'll call her . . . .

.   .   .

[Desirae]: But um, listen to – hey don't forget to ask Berta.

[Tanya]: I won't.  I'll call her.

On October 15, 2019, prosecutors and Lawrence called Roberta to discuss her upcoming testimony against Desirae.  Roberta now indicated that she had not seen anybody in the car on November 12.  The next day, Desirae again called Tanya:

[Tanya]: I took – and – I've already tooken [sic] care of the Berta Mae stuff and nothing to worry about but uh – um – me and her can't have no contact until after the hearing.  Until after your hearing but um, I've already – put a – got a 4-1-1 on it.  So before she spoke but yeah, the . . . day that I called her your – er the prosecuting attorney call[ed] her and Berta Mae [cursed her out]. . . . She goes . . . "I really don't recall anything . . . and [my brother's wife] Tanya and Desirae – and her brother where [sic] all living in that house.  [Desirae] was not at all trespassing. . . . and my understanding was they were [at the house] to look for a birth certificate . . . that's all I remember . . . what if I refuse to testify?" . . . .

.   .   .

[Tanya]: But [Berta] wanted me to – she wanted me to tell you she loves you and she's not – she's gonna do everything she can in her power . . . .

4

(Internal quotation marks added for clarity.) The recorded conversation was played for the jury. Roberta testified at Desirae's trial the next week that she had not seen anyone in the car.

¶5 The State charged Tanya with Tampering with Witnesses or Informants, a felony, in violation of § 45-7-206(1)(a) or (b), MCA. At trial, Tanya objected to Lawrence's discussion of Roberta's initial report to police on hearsay grounds. The court overruled the objection, finding that it was not being offered for the truth of the matter asserted, and thus was not hearsay. At the close of the State's case-in-chief, Tanya made a motion to dismiss for insufficient evidence under § 46-16-403, MCA. The District Court found there was sufficient evidence for the case to go to the jury and denied Tanya's motion. The jury found Tanya guilty. Tanya appeals.

## STANDARD OF REVIEW

¶6 We review a district court's evidentiary rulings for abuse of discretion. *State v. Buckles*, 2018 MT 150, ¶ 9, 391 Mont. 511, 420 P.3d 511. A court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in a substantial injustice. *Buckles*, ¶ 9. To the extent an evidentiary ruling is based on a district court's interpretation of the Montana Rules of Evidence, our review is de novo. *Buckles*, ¶ 9.

¶7 We review a district court's denial of a motion to dismiss for insufficient evidence de novo. *State v. Ellerbee*, 2019 MT 37, ¶ 13, 394 Mont. 289, 434 P.3d 910. We review the evidence in the light most favorable to the prosecution and reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5

*Ellerbee*, ¶ 13. The question is not whether the evidence could have supported a different verdict, but whether the evidence supports the jury's verdict. *State v. Larson*, 2004 MT 345, ¶ 52, 324 Mont. 310, 103 P.3d 524.

## DISCUSSION

¶8    *Issue One: Whether the District Court erred in admitting an out-of-court statement as non-hearsay.*

¶9    Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801(c). Hearsay is generally inadmissible unless an exception applies. M. R. Evid. 802. However, before deciding whether any exceptions to the hearsay rule apply, the court must first determine whether the statement is even hearsay. A statement is offered for the truth of the matter—and is thus hearsay—"'only when the immediate inference the proponent wants to draw is the truth of the assertion on the statement's face. If the proponent can demonstrate that the statement is logically relevant on any other theory, the statement is nonhearsay.'" *State v. Nolan*, 2016 MT 266, ¶ 28, 385 Mont. 190, 383 P.3d 219 (quoting *Siebken v. Voderberg*, 2015 MT 296, ¶ 22, 381 Mont. 256, 359 P.3d 1073).

¶10   The State argues that Roberta's statement to police was not hearsay for two reasons. First, the State argues that the statement was admissible to show the trajectory of Lawrence's investigation over time (i.e., because Lawrence knew Roberta gave an initial report to law enforcement saying Desirae was in the car and then later recanted that statement, Lawrence investigated and found that Tanya was potentially guilty of tampering with witnesses). Second, the State argues that it admitted the statement not to prove the

6

truth of the matter asserted—that Desirae was in the vehicle—but to prove that Roberta had made the statement, which was inconsistent with her testimony at Desirae's trial.

¶11   We agree.  A statement offered to show that the statement was made and the resulting state of mind is properly admitted.  *Nolan*, ¶ 28.  Here, like in *Nolan*, the State did not introduce the statement to show that Desirae was in fact in the Chrysler 300 that night, but to show that Roberta had made a statement to police that she was.  Lawrence testified that he had read the report from Roberta and watched the bodycam footage which confirmed that Roberta had made such a report.[2]  When Roberta changed her statement on October 15 and at trial, Lawrence proceeded to investigate why Roberta had changed her statement.  Lawrence testified that he downloaded Desirae's recorded calls from jail and that led him to investigate Tanya for tampering.  The admission of the statement to show how Lawrence proceeded with his investigation was an appropriate non-hearsay purpose. *Nolan*, ¶ 28.

¶12   *State v. Laird*, 2019 MT 198, 397 Mont. 29, 447 P.3d 416, and *State v. Butler*, 2021 MT 124, 404 Mont. 213, 487 P.3d 18, cited by appellant are not on point.  We

---

[2] If Lawrence's testimony was based solely on Weber's out-of-court statement that Roberta had made a statement, this might present a hearsay issue.  Instead—as Tanya and the Special Concurrence acknowledge—Lawrence gained personal knowledge that Roberta made the statement when he watched the body camera footage.  Weber's report is irrelevant here as Lawrence saw the same thing Weber saw when he watched the video of Roberta's statement. Lawrence may testify that Roberta made the statement, which is within his personal knowledge, for the nonhearsay purpose of showing that the statement was made.  *Cf., e.g.*, *Pritchard v. State*, 810 N.E.2d 758, 760–61 (Ind. Ct. App. 2004) (testifying to nonhearsay contents of purged video admissible as personal knowledge when witnesses had watched the video); *Commonwealth v. Connolly*, 78 N.E.3do 116 (Mass. App. Ct. 2017) (officer may testify about contents of missing video he watched if properly authenticated).  Additionally, because Lawrence has personal knowledge that Roberta made a statement, there is no hearsay issue on whether Lawrence may testify to Weber's out-of-court statement that Roberta made a statement.

reversed in those cases because, even though the evidence was admissible for the non-hearsay purpose of explaining the investigation, the State repeatedly used the evidence for the truth of the matter asserted. *Laird*, ¶¶ 75–80; *Butler*, ¶¶ 17–18. Here, the State did not use Roberta's statement to prove that Desirae was in fact in the car that night, it did not need to. The State only used it initially for the non-hearsay purposes of showing that the statement had been made and to explain Lawrence's investigation.

¶13 It was proper for the District Court to allow the statement to show that Roberta had made two inconsistent statements, which was important circumstantial evidence to show that she had changed or withheld testimony in Desirae's criminal trial. The State did not use Roberta's statement for the truth of the matter—i.e., that Desirae was actually in the car that night.

¶14 Additionally, M. R. Evid. 801(d)(1)(A) allows a statement inconsistent with a declarant's testimony to be introduced both to impeach and as substantive evidence if the declarant testifies at trial and is subject to cross examination regarding the statement. Roberta was not a witness in the State's case-in-chief, and it was thus not yet admissible as an inconsistent statement. Roberta testified for the defense. Her testimony was inconsistent with what she had reported to law enforcement the day that she called them. Both the State and Tanya questioned her on her inconsistent statement in the report. She was subject to cross examination concerning her statement and the State was then free to use the evidence substantively. *State v. Fitzpatrick*, 186 Mont. 187, 196, 606 P.2d 1343, 1348 (1980).

8

¶15 Tanya relies on *State v. Runs Above*, 2003 MT 181, 316 Mont. 421, 73 P.3d 161, for the proposition that the statement here is offered for the truth of the matter. Tanya's reliance on *Runs Above* is inapposite. There, a declarant's out-of-court statement was irrelevant except to prove the truth of the matter asserted. *Runs Above*, ¶¶ 21–22. Here, as discussed below, the State did not need to prove the veracity of Roberta's initial statement—that Desirae was in the car.

¶16 The relevance of the statement is that it was made, that Tanya and Desirae believed Roberta's upcoming testimony would be harmful to Desirae, and that Roberta ultimately testified inconsistently with it, creating a reasonable inference that she testified falsely after receiving a call from Tanya attempting to influence her testimony.

¶17 *Issue Two: Whether there was sufficient evidence for a jury to convict Tanya of Tampering with Witnesses or Informants.*

¶18 Tanya argues that the State failed to present sufficient evidence for the jury to convict her of tampering. According to the agreed upon jury instructions, the State had to prove three elements beyond a reasonable doubt for the jury to convict Tanya: (1) that Tanya believed an official proceeding or investigation was pending; (2) that Tanya attempted to induce or otherwise cause Roberta to testify or inform falsely or withhold any testimony, information, document, or thing; and (3) that Tanya acted purposely or knowingly. *See* § 45-7-206(1)(a), (b), MCA. Tanya only challenges the sufficiency of the evidence for the second element.

¶19 Tanya's main argument on appeal, and before the District Court, was that the circumstantial evidence provided by the State of the October 14 and October 16 phone calls

9

was not enough to show that Tanya had actually spoken to Roberta before her conversation with the prosecutor on October 15. For example, in support of her motion, Tanya argued that:

> the only evidence that has been put on that [Tanya] did anything to try and change or cause Roberta to not testify would be maybe there was more than one phone call [between Tanya and Roberta on October 15]. We don't know. That, I believe, is the only evidence that we have. That does not rise to the level of beyond a reasonable doubt. . . . *I think that more an even likely story could be* that [Tanya] heard the contents of this phone call [between the prosecutor and Roberta] from one of her family members.

(Emphasis added.) However, whether there are two plausible explanations for evidence is not the standard for a motion to dismiss for insufficient evidence. Section 46-16-403, MCA. As noted by Jury Instruction 11: "When circumstantial evidence is susceptible to two interpretations, one that supports guilt and the other that supports innocence, the Jury determines which is most reasonable."

¶20 Here, the State argued that Tanya's two phone calls with Desirae was sufficient circumstantial evidence for the jury to infer that Tanya had in fact called Roberta and attempted to influence her testimony. In the calls, Tanya said she would call Roberta about the charge at issue. Two days later, Tanya said that she had called Roberta, "took[] care of" it "and nothing to worry about," and then recounted the conversation that Roberta had with prosecutors the day before.

¶21 Tanya testified that she lied to Desirae to comfort her and that she had only received the information about Roberta's phone call from two members of her family and Desirae's lawyer. She argued to the jury that, because the October 16 recording showed knowledge of Roberta's conversation with the prosecutors, she must not have talked to Roberta before

10

the call with prosecutors. The State argued that another inference the jury could make was that Tanya and Roberta had spoken twice on October 15—once to influence her testimony and then again when Roberta recounted what she had told prosecutors.

¶22 The question is "not whether the evidence could have supported a different result. It is within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail." *State v. Sutton*, 2018 MT 143, ¶ 10, 391 Mont. 485, 419 P.3d 1201 (internal citation omitted); *see also Laird*, ¶ 60. It is "[o]nly in those rare cases where the story told is so inherently improbable or is so nullified by material self-contradiction that no fair-minded person could believe it" that we may say no firm foundation exists for the verdict based on it. *Larson*, ¶ 53.

¶23 Tanya's reliance on *State v. Hegg*, 1998 MT 100, 288 Mont. 254, 956 P.2d 754, is inapposite. There, we reversed a conviction for criminal forfeiture based on sufficiency of the evidence because the State presented no evidence that the property subject to forfeiture was used or intended for use in the drug trade. Instead, the State relied only on it being found in the same house as the drugs that Hegg was on trial for. *Hegg*, ¶ 18. Here, the circumstantial evidence makes a direct inference to the crime Tanya was convicted of.

¶24 Our review of the record shows that the State's inference is not so inherently improbable that we must reject it. Tanya testified that she had received details of Roberta's call with prosecutors from Desirae's attorney. On cross-examination, the prosecutor asked Tanya why then she had told Desirae on October 16 that she had talked to Desirae's lawyer and had given him Roberta's number so he could talk to her about the conversation with prosecutors if he was the one that had recounted the conversation to Tanya. Tanya

11

responded: "Because I -- I was just trying to -- You know, I -- I don't -- I don't know. I do -- I -- I saw in the transcript, and I -- I don't know why I said that . . . ." We will not reject the jury's verdict on this record.

¶25 Tanya also argues that there was no evidence that Desirae was even in the car besides Roberta's first report. Tanya argues that in order to support a conviction for tampering, the State must prove the truth of the underlying statement that is now alleged to be false. But the evidence at Tanya's trial showed that police recovered Desirae's notebook from the car and her cellphone from where the car had been parked on Roberta's property. Additionally, Tanya testified that Desirae had called her immediately after Roberta had seen the Chrysler 300 and asked her to call Roberta and tell her not to call the police. Nevertheless, Tanya's underlying argument—that the State must prove that Desirae was in the car and that Roberta identified her—is not required for a conviction under § 45-7-206(1)(a) or (b), MCA. Rather, that statute criminalizes an *attempt* to induce or otherwise cause a witness to testify falsely or withhold any testimony, information, document, or thing.

¶26 The phone calls between Tanya and Desirae show that they believed that Roberta would be a witness against Desirae and that her testimony would help in securing a conviction. Tanya said she would, and did, call Roberta to take care of it so Desirae would have nothing to worry about. The State introduced evidence that Roberta's testimony at trial conflicted with a statement she had given to police. Whether that first statement was true or not is not relevant to whether Tanya *attempted* to induce Roberta to testify falsely or withhold testimony. *Cf. State v. Palafox*, 2023 MT 26, ¶¶ 24–25, 411 Mont. 233,

12

524 P.3d 461 (affirming a witness tampering conviction when the "witness" had never in fact seen anything but defendant had threatened him thinking he would be a witness against him).

## CONCLUSION

¶27    The District Court did not abuse its discretion in admitting an out-of-court statement for a non-hearsay purpose.  The State produced sufficient evidence for a reasonable juror to convict Tanya of Tampering with Witnesses or Informants.

¶28    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice James Jeremiah Shea, specially concurring.

¶29    I concur in the Court's resolution of Issue Two.  I agree that the State presented sufficient admissible evidence for a reasonable juror to convict Tanya.  Opinion, ¶ 25.  I write separately as to Issue One.  While I agree with the Court's assessment that Roberta's statement, in and of itself, is not hearsay, the Court fails to substantively address the real hearsay issue in this case: Deputy Weber's written report.

13

¶30 Deputy Weber's report is plainly hearsay that does not fall within an exception. M. R. Evid. 801, 803(8)(i).[1] At trial, Detective Lawrence testified to Deputy Weber's out-of-court statement as to what Roberta told Deputy Weber. The error here lies not with Roberta's statement to Deputy Weber that Desirae was in the car, which I agree was not offered for the truth of the matter asserted, to the extent that the "matter being asserted" was whether or not Desirae was, in fact, in the car. The error here lies with permitting Detective Lawrence to repeat Deputy Weber's statement for the express purpose of asserting the truth of the matter that Roberta made *a* statement, that was inconsistent with later statements that she made, as a means of establishing Twoteeth's witness tampering. It is the error of allowing the introduction of this hearsay into evidence that the Court inadequately addresses.

¶31 That the State was using the hearsay of Deputy Weber's report to establish the truth of its assertion that Roberta made a statement that she subsequently changed is beyond dispute. The State explicitly acknowledges this point in its brief on appeal. Regarding its purpose in introducing Roberta's statement to Deputy Weber, the State asserts: "[T]he State was required to prove that Tanya had tampered with Roberta's testimony. To do so, the State provided evidence that Roberta recanted her *original statement*." (Emphasis added.) Toward that end, the State explains:

> It was the existence of Roberta's statement that was determinative, not the truth of *that statement* . . . . [T]he statement was admissible *for the purpose of showing that Roberta had originally made the statement, to show that she*

---

[1] The State does not argue that Deputy Weber's report qualifies for a hearsay exception, because it fails to acknowledge that the report itself is hearsay.

*later changed her statement* prior to Desirae's trial and at Desirae's trial itself.

(Emphasis added.)  Put another way, the State acknowledges that it called Detective Lawrence to repeat the hearsay of Deputy Weber's report to the jury, not for the truth of Roberta's statement, but "for the purpose of showing [the truth of the matter] that Roberta had originally made the statement, to show that she later changed her statement prior to Desirae's trial and at Desirae's trial itself."

¶32    If the State had called Deputy Weber to testify personally as to what Roberta told him there would have been no error since Roberta's statement itself was not hearsay.  But the District Court erred by failing to distinguish Roberta's statement to Deputy Weber from Deputy Weber's out-of-court statement, repeated by Detective Lawrence at trial, that Roberta had made a statement, that was inconsistent with subsequent statements Roberta had made, which was introduced for the express purpose of establishing the dispositive factual matter that Roberta changed her story.

¶33    Notwithstanding the error of allowing Deputy Weber's hearsay statement into evidence, I would hold that the error was harmless because Detective Lawrence had knowledge of Roberta's statement from a source independent of Deputy Weber's report.  As the record reflects, and Twoteeth acknowledges in her opening brief: "Detective Lawrence testified he had knowledge of [Roberta's] statement from reading Deputy Weber's report . . . and from reviewing Deputy Weber's body camera footage, which was no longer available."  Whether there may have been foundational or spoliation objections to Deputy Weber's body camera footage, and Detective Lawrence testifying as to what he

15

viewed in that footage, Twoteeth made no objections on that basis, nor does she argue this point on appeal. Since I agree Roberta's statement is not hearsay, Detective Lawrence's testimony about what he heard Roberta say in the body camera footage is redundant of the statement Deputy Weber attributes to Roberta in his written report. Therefore, admitting Detective Lawrence's testimony about the report was harmless.[2] I would also hold the error of admitting Deputy Weber's hearsay statement to be harmless because the recorded conversations between Desirae and Twoteeth that were played for the jury—as set forth in the Court's Opinion, ¶ 4—leave little doubt that Roberta identified Desirae as being present when she called the police about the Chrysler 300 trespassing on her property.

¶34 Admission of inadmissible hearsay is a trial error analyzed for its prejudicial effect under the harmless error standard. *State v. Van Kirk*, 2001 MT 184, ¶¶ 40, 44, 306 Mont. 215, 32 P.3d 735. An error is harmless if "there is [no] reasonable possibility that the inadmissible evidence might have contributed" to the conviction. *State v. Kaarma*, 2017 MT 24, ¶ 89, 386 Mont. 243, 390 P.3d 609 (citation omitted). So long as the State presented the jury with "admissible evidence proving the same facts as the tainted evidence," the inadmissible statements are not prejudicial. *State v. Smith*, 2021 MT 148, ¶ 34, 404 Mont. 245, 488 P.3d 531 (citation omitted). Twoteeth was not prejudiced by the

---

[2] The Court acknowledges the hearsay implications of Detective Lawrence's testimony as it pertained to Deputy Weber's report when it notes that "[i]f Lawrence's testimony was based solely on Weber's out of court statement that Roberta had made a statement, this might present a hearsay issue." Opinion, ¶ 11 fn. 2. But while the Court dismisses the hearsay implications of Deputy Weber's report as "irrelevant" because Detective Lawrence also heard Roberta make the same statements on the body camera footage, this does not render the report any less of a hearsay violation—it just makes the error of admitting the hearsay harmless.

16

admission of Deputy Weber's hearsay statement; therefore, the error of admitting the statement was harmless.

¶35 Although I would hold that the District Court erred by allowing Detective Lawrence to testify to the hearsay statement of Deputy Weber, I would hold that the error was harmless for the reasons discussed above. I therefore concur that Twoteeth's conviction should be affirmed.

/S/ JAMES JEREMIAH SHEA

Justices Ingrid Gustafson and Laurie McKinnon join in the specially concurring Opinion of Justice James Jeremiah Shea.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON