No. 98-597

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 147

295 Mont. 42

983 P.2d 332

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BRAND CAEKAERT,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Maurice R. Colberg, Jr., Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Mark S. Hilario, Hilario Law Firm, Billings, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Dan Schwarz, Deputy County

Attorney, Billings, Montana

Submitted on Briefs: June 10, 1999

Decided: June 29, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Brand Caekaert appeals the order of the Thirteenth Judicial District Court, Yellowstone County, revoking his suspended sentence and committing him to the custody of the Montana Department of Corrections and Human Services (DOC). We affirm.**

**¶2. The sole issue presented in this appeal is whether the District Court erred in revoking Caekaert's suspended sentence.**

## BACKGROUND

**¶3. Caekaert was placed on probation in November 1996 after receiving a suspended sentence for a felony theft conviction. In early March 1997, Caekaert's probation officer, Julie McLaughlin, received information from an agent with the federal Bureau of Alcohol, Tobacco and Firearms (ATF) that a Winnebago containing firearms had been sporadically parked on Caekaert's property. McLaughlin did nothing at that time because she believed the ATF was handling the case and would apprise her of any further developments. Later that month, an officer with the Billings, Montana, Police Department contacted McLaughlin to inform her that one of Caekaert's neighbors had reported hearing gunshots fired on Caekaert's property the evening before.**

¶4. Based on this report, McLaughlin obtained a warrant and conducted a search of the residence and outbuildings on Caekaert's property. In one of the outbuildings, officers discovered twelve assorted rifles and pistols and several miscellaneous boxes of ammunition. The items were wrapped in blankets and stuffed into the cushions of or underneath a couch stored inside the building. The officers confiscated the weapons and arrested Caekaert for probation violation.

¶5. The District Court conducted a probation revocation hearing and found that Caekaert had been in constructive possession of firearms in violation of the conditions of his suspended sentence. In an order dated July 10, 1998, the District Court revoked Caekaert's probation and sentenced him to three years in the custody of the DOC. Caekaert appeals the revocation of his probation and his commitment to the DOC. We affirm.

## DISCUSSION

¶6. Did the District Court err in revoking Caekaert's suspended sentence?

¶7. We review a district court's revocation of a suspended sentence to determine whether that court abused its discretion. *State v. Baisch*, 1998 MT 12, ¶ 10, 287 Mont. 191, ¶ 10, 953 P.2d 1070, ¶ 10. So long as the district court is satisfied that the conduct of the probationer has not been what he agreed it would be when he was given liberty, this Court will not overturn a district court's decision to revoke a suspended sentence. *Baisch*, ¶ 10. In order to revoke a suspended sentence, the State must prove by the preponderance of the evidence that the probationer violated terms or conditions of his suspended sentence. Section 46-18-203(6), MCA.

¶8. Among the terms of Caekaert's probation was the condition that he "not own, possess, or be in control of any firearms or deadly weapons, including black powder, as defined by State or Federal Law." Caekaert argues that he was not in violation of the terms of his probation because the weapons recovered from the outbuilding located on his property did not in fact belong to him, but were owned by various friends and relatives who were merely storing the weapons on his property. Additionally, Caekaert argues that even though the weapons were located on his property, he had no right to maintain control over them because their owners had not given him permission to do so.

¶9. The State responds that for purposes of determining whether Caekaert was in constructive possession of the firearms, it is wholly irrelevant whether Caekaert owned the guns or had the permission of the owners to exercise control over them. Rather, the State argues, such a determination may be predicated upon a finding that Caekaert knew of the presence of the weapons and exercised a means of control over them. We agree.

¶10. "Possession" is the knowing control of anything for a sufficient time to be able to terminate control. Section 45-2-101(57), MCA. "Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." *State v. Meader* (1979), 184 Mont. 32, 43, 601 P.2d 386, 392.

¶11. It is an undisputed fact that Caekaert knew there were weapons stored in the outbuilding. Moreover, McLaughlin testified at the revocation hearing that it was Caekaert who provided McLaughlin with the key to the building where the guns were located.

¶12. The District Court apparently found that to the extent that Caekaert exercised dominion and control over the buildings on his property, he was in constructive possession of the property inside them. Such a finding is consistent with our opinion in *Meader,* 184 Mont. at 43, 601 P.2d at 392, in which we upheld a jury verdict that the defendant had constructive possession of narcotics found in his residence where there was ample evidence to support the finding that the defendant exercised dominion and control over the premises in which the drugs were located. Furthermore, the possession of keys to a locked area is probative of constructive possession of items within that area. *State v. Turner* (Wash. App. 1977), 571 P.2d 955, 957.

¶13. Despite Caekaert's efforts to demonstrate that he was not the legal owner of the weapons and had no legal right to exercise control over them, neither of those facts, if proven, is sufficient as a matter of law to preclude a finding of constructive possession. Because there is ample evidence in the record to support the District Court's determination that Caekaert did in fact exercise knowing control over the building where the weapons were stored, and thereby exercise knowing control over

the building's contents, we hold that the District Court did not abuse its discretion in revoking Caekaert's suspended sentence for constructive possession of firearms.

**¶14. Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER