No. 01-814

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 181

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

WADE ELLIOT RUNS ABOVE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus, Cause No. DC-2000-48
The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Craig R. Buehler, Lewistown, Montana

      For Respondent:

      Mike McGrath, Montana Attorney General, Cregg W. Coughlin, Assistant
Montana Attorney General, Helena, Montana; Thomas P. Meissner, Fergus
County Attorney, Lewistown, Montana

Submitted on Briefs:  June 27, 2002

Decided:  July 10, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellant Wade Elliot Runs Above was convicted of obstructing justice, criminal trespass to vehicles by accountability, driving a vehicle without liability insurance, and driving with a suspended or revoked license in the Tenth Judicial District Court, Fergus County.  Runs Above appeals.  We reverse the judgment of the District Court.

¶2     We restate the issues on appeal as follows:

¶3     1.  Did the District Court abuse its discretion when it allowed Deputy McCord to testify as to statements made by Ruth LaFromboise and Nolan Small?

¶4     2.  Was there sufficient evidence to support Runs Above's conviction of obstructing justice?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On September 28, 2000, Don Coulon's Jeep Cherokee stalled at the intersection of Stillman Road and Highway 87, approximately twelve miles east of Lewistown, Montana. Coulon parked the Jeep about thirty feet off the roadway, locked it, and left the area.  Later that same day, Coulon's neighbor, Roger "Slim" Lemmon, was returning home from Lewistown in his pickup truck.  Slim's wife, Kim, was following in the family car.

¶6     As the Lemmons approached the intersection of Stillman Road and Highway 87, they noticed that Coulon's Jeep and a gray Oldsmobile were parked alongside each other near the roadway.  Slim also noticed a man standing between the two vehicles, holding open the driver's side door of the Jeep, and a second man, rummaging through the inside of the Jeep. Fearing that Coulon's Jeep was being vandalized, Slim stopped his truck.  However, as Slim

2

exited his truck, the man who had been standing between the two vehicles jumped into the driver's seat of the Oldsmobile. The other man then jumped into the Oldsmobile, and the two men drove away.

¶7 The Oldsmobile began to drive west toward Lewistown. Slim instructed Kim to follow the Oldsmobile and attempt to determine its license plate number. Slim then proceeded to Coulon's residence where he telephoned law enforcement. Kim followed the Oldsmobile but was never able to read the license plate number. During her pursuit of the Oldsmobile, one of its passengers leaned out of the window twice and fired a gun at Kim's vehicle. Kim then slowed her car down and, upon her arrival in Lewistown, notified a police officer of the incident.

¶8 Montana Highway Patrol Officer Kelly Mantooth received an "attempt to locate" for a gray Oldsmobile in the Lewistown area. Officer Mantooth later located a vehicle that matched the description and began to follow it. The Oldsmobile was eventually stopped by Officer Mantooth at a location approximately fourteen miles outside of Lewistown. At the time of the stop, Wade Elliot Runs Above was driving the Oldsmobile, and Nolan Small was sitting in the passenger seat. Ruth LaFromboise and Vine Archambeault were sitting in the Oldsmobile's rear seat with a large, western-style saddle between them. The Oldsmobile was registered to Runs Above.

¶9 Fergus County Deputy Sheriff Larry McCord telephoned the Lemmons and requested that they come to the Sheriff's Office in Lewistown to provide written statements. While at the Sheriff's Office, Slim identified Runs Above as the man he observed standing between

3

Coulon's Jeep and the Oldsmobile, and as the man he observed driving the Oldsmobile.

¶10 On September 29, 2000, Larry Matovich reported that a saddle had been stolen from the back of his pickup truck the previous day. Matovich later identified the saddle found in the Oldsmobile as the one stolen from his truck.

¶11 On October 10, 2000, the Respondent, State of Montana, filed an information charging Runs Above with obstructing justice, a felony, in violation of § 45-7-303, MCA (1999), criminal mischief, a misdemeanor, in violation of § 45-6-101, MCA (1999), and criminal trespass to vehicles by accountability, a misdemeanor, in violation of § 45-6-202, MCA (1999). Runs Above pled not guilty to all three charges on October 16, 2000. On November 15, 2000, Runs Above filed a motion to dismiss. The District Court denied Runs Above's motion to dismiss on December 12, 2000.

¶12 On February 2, 2001, Runs Above filed a motion to suppress all evidence resulting from the stop of his vehicle. The District Court denied Run Above's motion to suppress on March 16, 2001. Runs Above then filed a motion to limit testimony on March 19, 2001. Runs Above's motion requested that the District Court limit the testimony of law enforcement officers to statements concerning Runs Above's charges in the instant case. Runs Above also filed a second motion to suppress that same day.

¶13 On March 19, 2001, the State filed an amended information, in which it added an additional charge of obstructing justice, a felony, in violation of § 45-7-303, MCA (1999). The amended information also charged Runs Above with driving a vehicle without liability insurance, a misdemeanor, in violation of § 61-6-301, MCA (1999), and driving with a

4

suspended or revoked license, a misdemeanor, in violation of § 61-5-212, MCA (1999). Runs Above pled not guilty to the three additional charges contained in the amended information on April 5, 2001.

¶14 On April 20, 2001, Runs Above filed a third motion to suppress. On May 2, 2001, the District Court denied Runs Above's second and third motions to suppress, and granted Runs Above's motion to limit testimony. The case proceeded to jury trial on May 15, 2001. On May 16, 2001, the jury found Runs Above guilty of: (1) obstructing justice; (2) criminal trespass to vehicles by accountability; (3) driving a vehicle without liability insurance; and (4) driving with a suspended or revoked license. The District Court sentenced Runs Above on September 20, 2001. Runs Above appealed his conviction and sentence, as well as the District Court's denial of his pre-trial motions on October 10, 2001.

## STANDARD OF REVIEW

¶15 We review a district court's evidentiary rulings for an abuse of discretion. *State v. Stevens*, 2002 MT 181, ¶ 24, 311 Mont. 52, ¶ 24, 53 P.3d 356, ¶ 24. The District Court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of an abuse of discretion, the trial court's determination will not be overturned. *Stevens*, ¶ 24.

¶16 We review the sufficiency of evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Bingman*, 2002 MT 350, ¶ 48, 313 Mont. 376, ¶ 48, 61 P.3d 153, ¶ 48.

5

## DISCUSSION

## ISSUE 1

¶17 **Did the District Court abuse its discretion when it allowed Deputy McCord to testify as to statements made by Ruth LaFromboise and Nolan Small?**

¶18 Deputy McCord testified at trial as to statements made by both Ruth LaFromboise and Nolan Small. Deputy McCord testified as follows:

Q. Deputy McCord, did you attempt to interview Ms. LaFromboise, one of the occupants of the vehicle?

A. Yes.

Q. And when did you attempt to do that?

A. When she would be booked in.

Q. Okay, and that was on September 28th of 2000?

A. That's correct.

. . . .

Q. Did she make any statements to you that would indicate to you that she was present at the Coulon car east of - east of Lewistown?

A. Yes.

. . . .

A. She told me that they saw the vehicle there and pulled over to assist the person there is what - what she told me.

Q. Okay. As far as your knowledge was there any person there when they pulled over?

A. Not to my knowledge.

Q. Okay, but that's what she said - they had pulled over to offer assistance?

A. Yes.

. . . .

Q. [A]nd did you attempt to interview Nolan Small?

A. I did.

. . . .

Q. My understanding was he didn't want to talk, and you were leaving, and he made a gratuitous statement -

A. Yes.

Q. [A]nd what was his gratuitous statement?

A. He - after reading his rights he decided he didn't want to talk to me. I said, "That's fine. I will take you back to the cell," and going out the interview door of the room he said, "The saddle wasn't worth" - I am trying to remember exactly now.

Q. Take a moment to refer to your report if you like. I guess I could have left you my copy.

A. Yes, that might be easier. In my report I - I copied down that on the way out of the interview room he made the statement that the saddle was just an old crusty saddle and it was not worth a felony. I told him it didn't belong to him, and he said it was just there for the taking, so that's what he told me going out the door.

Q. An old crusty saddle - it wasn't worth a felony -

A. Right.

Q. [A]nd it was there for the taking?

A. Yes.

7

Q. Was he referring to Mr. Matovich's saddle?

A. Yes.

Q. I mean that was your perception?

A. Yes.

¶19 Runs Above objected to the above testimony at trial, alleging that the statements of LaFromboise and Small were hearsay. The District Court found that because the statements were not being offered to prove "the truth of the matter asserted," such statements were not hearsay. Accordingly, the District Court overruled Runs Above's objection, and allowed Deputy McCord to testify as to the statements of LaFromboise and Small.

¶20 Rule 801(c), M.R.Evid., provides: "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible in court, except as otherwise provided by statute, the Montana Rules of Evidence, or other rules applicable in the courts of this state. See Rule 802, M.R.Evid.

¶21 According to Deputy McCord, Ruth LaFromboise stated that the Oldsmobile had stopped near Coulon's Jeep on September 28, 2000, in order to offer assistance. The State contends that this statement was not offered to prove the truth of the matter asserted; however, we can find no other purpose for the introduction of the statement. That is, if LaFromboise's statement was not offered to prove that the Oldsmobile had stopped next to Coulon's Jeep on the date that it was vandalized, then her statement had no probative value, and was not relevant to the charges against Runs Above. See generally *Matter of D. W. L.*

8

(1980), 189 Mont. 267, 270-71, 615 P.2d 887, 889. Relevant evidence is evidence that has a "tendency to made the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. LaFromboise's statement was relevant only to the extent that it proved that the Oldsmobile driven by Runs Above had stopped near Coulon's Jeep on September 28, 2000. Accordingly, we conclude that LaFromboise's statement was offered solely to prove the truth of the matter asserted, and as such, her statement constituted inadmissible hearsay.

¶22    Nolan Small informed Deputy McCord that the saddle was old, crusty, not "worth a felony," and "there for the taking." The State alleges that because Small's statements were not offered to prove their truth (that the saddle was old, crusty, not worth a felony, and there for the taking), the statements were not hearsay. However, as was the case with LaFromboise's statement, we can find no purpose for Small's statements other than to prove their truth. That is, Small's statements were relevant only to the extent that they proved that Small was aware of the condition of the saddle and that he had in fact taken the saddle from Matovich's vehicle on September 28, 2000. Accordingly, we conclude that Small's statements were offered solely to prove the truth of the matter asserted, and as such, the statements were inadmissible hearsay.

¶23    The statements of LaFromboise and Small were inadmissible, and the District Court abused its discretion when it allowed Deputy McCord to testify to such statements at trial. However, a district court's abuse of discretion with regard to an evidentiary ruling does not necessarily constitute reversible error, as "a reversal cannot be predicated upon an error in

9

admission of evidence, where the evidence in question was not of such character to have affected the result." *In re A. N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, ¶ 55, 995 P.2d 427, ¶ 55 (citations omitted).

¶24   In *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, this Court adopted a two-step analysis to determine whether an alleged error prejudiced a criminal defendant's right to a fair trial and is therefore reversible. The first step of the *Van Kirk* analysis requires us to categorize the error as either structural error or trial error. *Van Kirk*, ¶ 37. In this case, the District Court abused its discretion when it allowed Deputy McCord to testify to hearsay evidence at trial. Therefore, the error here is properly categorized as trial error. See *Van Kirk*, ¶ 40.

¶25   If the error is determined to be trial error, the second step of the *Van Kirk* analysis requires us to ascertain whether such error was harmless under the circumstances. *Van Kirk*, ¶ 41. In order to prove that a trial error was harmless,

> [T]he State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction. To do this, the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence would not have contributed to the conviction.

*Van Kirk*, ¶ 47.

¶26   In this case, the statements of LaFromboise and Small were introduced by the State as circumstantial evidence which connected Runs Above to both the vandalization of Coulon's Jeep and the theft of Matovich's saddle. Although other witnesses testified as to

Runs Above's potential involvement in the vandalization and theft, we cannot conclude that in the absence of the hearsay testimony, the jury would have convicted Runs Above of the charges of obstructing justice and criminal trespass to vehicles by accountability. That is, the State has not demonstrated that there is no reasonable possibility that the hearsay testimony contributed to Runs Above's convictions. Consequently, we hold that the District Court's admission of the hearsay testimony prejudiced Runs Above's right to a fair trial. Therefore, we remand this case for a new trial on the charges of obstructing justice and criminal trespass to vehicles by accountability.

## ISSUE 2

¶27 **Was there sufficient evidence to support Runs Above's conviction of obstructing justice?**

¶28 On appeal, Runs Above contends that in the absence of the statements of Ruth LaFromboise and Nolan Small, insufficient evidence exists to support his conviction of obstructing justice. However, pursuant to our resolution of issue one, Runs Above's conviction of obstructing justice has been reversed and remanded for a new trial. Thus, the question of the sufficiency of the evidence to support his conviction is moot. As such, we decline to reach this issue.

¶29 For the foregoing reasons, the judgment of the District Court is reversed and remanded for proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

11

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE
/S/ JOHN WARNER