Justice James Jeremiah Shea delivered the Opinion of the Court.
***291 ¶1 Appellant Jason W. Ellerbee appeals the jury verdict and Sentencing Order of the Eighteenth Judicial District Court, Gallatin County, finding Ellerbee guilty of criminal possession of dangerous drugs, in violation of § 45-9-102, MCA. We address the following issues on appeal:
Issue One: Whether Double Jeopardy precluded the State from retrying Ellerbee.
Issue Two: Whether the jury was correctly instructed on the charge of criminal possession of dangerous drugs during Ellerbee's second jury trial.
Issue Three: Whether the District Court abused its discretion by overruling Ellerbee's hearsay objection regarding his traveling companions' conflicting statements to officers during Ellerbee's second jury trial.
Issue Four: Whether cumulative trial error requires reversal.
¶2 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In early 2015, the Missouri River Drug Task Force (Task Force) began investigating Michael Santos after learning that Santos was distributing methamphetamine in Gallatin County. Through a ***292 confidential informant, the Task Force learned that Santos would be traveling out of state to obtain methamphetamine. On April 2, 2015, the Task Force applied for and received a search warrant to install a tracking device on Santos's vehicle. In the process of placing the tracking device, a detective with the Task Force observed Santos and Ellerbee occupying the vehicle.
¶4 On April 9, 2015, the tracking device alerted the Task Force that Santos's vehicle had left the Bozeman area. The vehicle stopped at a Wal-Mart in Butte, and then proceeded to Spokane, Washington. From Spokane, the vehicle traveled north to a residence in Elk, Washington, and then returned to Bozeman. Early on the morning of April 10, 2015, the Task Force requested that Montana Highway Patrol stop Santos's vehicle once it reentered Gallatin County. Trooper Erick Fetterhoff observed and followed Santos's vehicle and eventually stopped the vehicle for failing to use a turn signal and for having a cracked windshield.
¶5 Once Fetterhoff approached the vehicle, he observed that Santos was driving, Ellerbee was asleep in the backseat, and Rebecca Phillips was in the front passenger seat. Fetterhoff noted that Santos and Phillips were both nervous and uncomfortable in dealing with him. Fetterhoff asked the pair where the three of them were going. Phillips responded that they were returning to Bozeman from Spokane after visiting a relative. After being removed from the vehicle to conduct a pat-down search, Santos told Fetterhoff they had visited a close friend near Spokane named "Sandy." When Fetterhoff asked Phillips for the name of the relative she had visited, she initially could not provide a name before offering that it was "Sandy."
*913 Phillips later clarified to officers assisting Fetterhoff that "Sandy" was Ellerbee's aunt.
¶6 Fetterhoff issued Santos a warning for the traffic offenses and cited Phillips for not having a valid insurance card in the vehicle. Fetterhoff told Santos and Phillips that they were free to leave, but that he did not believe their stories and that he suspected there were drugs in the car. Santos then admitted to having marijuana in his coat pocket, a methamphetamine pipe in the vehicle, and that Phillips had recently consumed methamphetamine. Fetterhoff seized the vehicle and obtained a search warrant.
¶7 After the vehicle was seized, Ellerbee woke up and confirmed his identity to officers assisting Fetterhoff. Ellerbee corrected Phillips that "Sandy" was not his aunt, but was instead just a friend. After running Ellerbee's name, officers assisting Fetterhoff arrested Ellerbee on outstanding warrants.
¶8 During the search of the vehicle, officers discovered twenty-seven ***293 grams of methamphetamine stowed under the rear seat. Officers additionally found a receipt from the Butte Wal-Mart for a $ 900 MoneyGram from Santos to a "Sandy Trower" and drug paraphernalia used for ingesting methamphetamine. The Task Force also applied for and received a search warrant authorizing a search of Ellerbee's cell phone, which was seized during his arrest. On Ellerbee's phone, officers found text messages to a "Sandy Trower." The sender, identifying as "Jason," indicated that Ellerbee was going to travel to meet with "Sandy" about obtaining an ounce of an unidentified substance. There were also texts discussing a MoneyGram, the MoneyGram's confirmation number, and that the MoneyGram would be sent through a Wal-Mart. The MoneyGram confirmation number matched the receipt for the MoneyGram located inside the vehicle.
¶9 On September 14, 2015, the State charged Ellerbee with one count of criminal possession of dangerous drugs with intent to distribute, a felony in violation of § 45-9-103, MCA. On March 29-30, 2016, the case proceeded to a jury trial. At the close of the State's case, Ellerbee's counsel moved for a directed verdict based on insufficiency of the evidence. The District Court denied the motion and submitted the case to the jury. The jury was unable to reach a verdict and the District Court declared a mistrial.
¶10 On April 26, 2016, the State amended the Information to charge Ellerbee with criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA. On August 8-9, 2016, the District Court conducted a second jury trial on the amended charge. The State presented the same witnesses and admitted the same evidence.
¶11 During Ellerbee's second trial, Ellerbee's counsel objected on hearsay grounds to officer testimony repeating Santos's and Phillips's conflicting statements about "Sandy" during the traffic stop. The District Court overruled the objection, finding that the statements were offered to show inconsistent statements made by Santos and Phillips and not for the truth of the matter asserted. The District Court provided the jury with a cautionary instruction that the pair's statements were being admitted for this limited purpose. At the close of trial, Ellerbee also requested that a "mere presence" jury instruction be given, which the District Court refused.
¶12 On August 9, 2016, the jury found Ellerbee guilty of criminal possession of dangerous drugs. The District Court designated Ellerbee a persistent felony offender and sentenced him to five years in the Montana State Prison.
***294 STANDARD OF REVIEW
¶13 We review a district court's denial of a motion for a directed verdict de novo. State v. McAlister , 2016 MT 14, ¶ 6, 382 Mont. 129, 365 P.3d 1062 (citing State v. Swann , 2007 MT 126, ¶¶ 18-19, 337 Mont. 326, 160 P.3d 511 ). We review the sufficiency of the evidence in a criminal case to determine whether "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Polak , 2018 MT 174, ¶ 34, 392 Mont. 90, 422 P.3d 112 (citing State v. Rosling , 2008 MT 62, ¶ 35, 342 Mont. 1, 180 P.3d 1102 ; State v. Roedel , 2007 MT 291, ¶ 35, 339 Mont. 489, 171 P.3d 694 ).
*914 ¶14 We review a district court's decision regarding jury instructions for an abuse of discretion. State v. Kaarma , 2017 MT 24, ¶ 7, 386 Mont. 243, 390 P.3d 609 (citing Ammondson v. Nw. Corp. , 2009 MT 331, ¶ 30, 353 Mont. 28, 220 P.3d 1 ). "A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." Kaarma , ¶ 6 (citing Ammondson , ¶ 30 ).
¶15 We review a district court's evidentiary rulings for abuse of discretion. Kaarma , ¶ 11 (citing State v. Huerta , 285 Mont. 245, 254, 947 P.2d 483, 489 (1997) ). District courts have "broad discretion to determine whether evidence is relevant and admissible." Kaarma , ¶ 11 (citing State v. Duffy , 2000 MT 186, ¶ 43, 300 Mont. 381, 6 P.3d 453 ).
DISCUSSION
¶16 Issue One: Whether Double Jeopardy precluded the State from retrying Ellerbee.
¶17 Article II, Section 17 of the Montana Constitution and the Due Process Clause of the United States Constitution protect the accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." State v. Davis , 2012 MT 129, ¶ 11, 365 Mont. 259, 279 P.3d 162 ; Statev. Newman , 2005 MT 348, ¶ 19, 330 Mont. 160, 127 P.3d 374 (quoting In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ). A trial court is authorized to direct a verdict of acquittal where there is insufficient evidence, as a matter of law, to support a conviction. Section 46-16-403, MCA. When proof beyond a reasonable doubt has not been established, a district court may dismiss a criminal action at the close of the prosecution's evidence. Section 46-16-403, MCA ; Davis , ¶ 11.
***295 ¶18 It is a crime to possess any dangerous drug, including methamphetamine. Section 45-9-102, MCA. "Possession" is the knowing control of anything for a sufficient time to be able to terminate control. Section 45-2-101(59), MCA. "Constructive possession" occurs when the "accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." State v. Caekaert , 1999 MT 147, ¶ 10, 295 Mont. 42, 983 P.2d 332 (citing State v. Meader , 184 Mont. 32, 43, 601 P.2d 386, 392 (1979) ).
¶19 The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The Montana Constitution provides similar protections, stating "[n]o person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." Mont. Const. art. II, § 25. We have interpreted Article II, Section 25 as providing criminal defendants with greater protection against double jeopardy than the United States Constitution. State v. Cline , 2013 MT 188, ¶ 8, 371 Mont. 18, 305 P.3d 55 (citing State v. Cech , 2007 MT 184, ¶ 13, 338 Mont. 330, 167 P.3d 389 ).
¶20 Ellerbee contends that during the first trial, the State failed to introduce sufficient evidence that Ellerbee knew about and possessed the methamphetamine in the vehicle or intended to distribute methamphetamine. Ellerbee argues that his conviction for criminal possession must be vacated on double jeopardy grounds because it would constitute double jeopardy for the State to proceed forward with the same evidence on an amended charge had the District Court properly granted his Motion for Directed Verdict based on insufficient evidence during the first trial.
¶21 The State responds that Ellerbee's double jeopardy claim is without merit because the District Court did not err by denying Ellerbee's Motion for Directed Verdict in the first jury trial, and that in any event, a mistrial based upon a jury's inability to reach a verdict does not give rise to a double jeopardy claim. Because we agree with the State's argument that the District Court did not err by denying Ellerbee's Motion for Directed Verdict in the first trial, we decline *915 to ***296 address the substance of Ellerbee's Double Jeopardy argument.[1]
¶22 The District Court properly denied Ellerbee's Motion for Directed Verdict based on insufficient evidence during his first trial. Contrary to Ellerbee's argument, the State's case was based upon more than just Ellerbee's presence in the vehicle at the time of the traffic stop. The State presented testimony that Santos was a person of interest to the Task Force and that Ellerbee was with Santos when the tracking device was placed on the vehicle. The State also presented evidence showing Ellerbee, along with Santos and Phillips, drove from Bozeman to Elk, Washington to visit Sandy and stopped briefly before returning to Bozeman. Finally, the State presented incriminating text messages between Ellerbee and Sandy indicating a transaction was to take place through a MoneyGram from Walmart, presented the receipt that had been located in the vehicle from that transaction, and presented additional text messages that indicated Ellerbee was involved in drug transactions. The State presented more than sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Ellerbee knew about the methamphetamine under his passenger seat, was in possession of the methamphetamine, and had intended to distribute the methamphetamine. See § 46-16-403, MCA ; Polak , ¶ 34 ; Rosling , ¶ 35 ; Roedel , ¶ 35 ; see also § 45-9-103, MCA ; § 45-2-101(59), MCA ; Caekaert , ¶ 10.
¶23 The District Court did not err in denying Ellerbee's Motion for Directed Verdict during his first jury trial. See § 46-16-403, MCA ; Davis , ¶ 11 ; Newman , ¶ 19. There was sufficient evidence for the District Court to submit the case to the jury to determine if the elements of criminal possession of dangerous drugs with the intent to distribute were met. See § 45-9-103, MCA ; Polak , ¶ 34 ; Rosling , ¶ 35 ; Roedel , ¶ 35.
¶24 Issue Two: Whether the jury was correctly instructed on the charge of criminal possession of dangerous drugs during Ellerbee's second jury trial.
¶25 A district court has broad discretion in formulating jury instructions. Polak , ¶ 25 (citing State v. Spotted Eagle , 2010 MT 222, ¶ 6, 358 Mont. 22, 243 P.3d 402 ). The jury instructions in criminal cases must fully and fairly instruct the jury on the applicable law.
***297 Polak , ¶ 25 (citing Kaarma , ¶ 7 ; State v. English , 2006 MT 177, ¶ 39, 333 Mont. 23, 140 P.3d 454 ). A district court fulfills its duty to instruct the jury on each theory that finds support in the record by giving instructions which accurately and correctly state the law applicable in a case. Kaarma , ¶ 26 (citations omitted); see State v. Sheehan , 2017 MT 185, ¶ 33, 388 Mont. 220, 399 P.3d 314. "[W]hen conflicting evidence is presented, the district court must provide jury instructions on both theories supported by the evidence." Polak , ¶ 25 (quoting Kaarma , ¶ 25 ). To constitute reversible error, any mistake in instructing the jury must prejudicially affect a defendant's substantial rights. Polak , ¶ 25 ; Kaarma , ¶ 7 (citing Spotted Eagle , ¶ 6 ).
¶26 In Ellerbee's second jury trial, the District Court instructed the jury that to convict Ellerbee of criminal possession of dangerous drugs, the State had to prove the following elements:
1. That the Defendant possessed the dangerous drug methamphetamine;
AND
2. That Ellerbee acted purposely or knowingly.
The District Court additionally instructed the jury on the respective definitions of "knowingly," "dangerous drugs," and "possession."[2]
*916 ¶27 Based on Ellerbee's theory of the case-that Ellerbee was only a passenger in the vehicle and the State failed to prove he had possession over the drugs-Ellerbee requested that a "mere presence" instruction be given. Ellerbee's proposed instruction stated:
Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant, Jason Ellerbee, was involved in the crime. To be responsible, you must find beyond a reasonable doubt that Jason Ellerbee was a participant and not merely a knowing spectator.
The District Court denied Ellerbee's request for a "mere presence" instruction, determining that it was only appropriate in accountability cases.
¶28 On appeal, Ellerbee argues that since his defense strategy at trial ***298 was that Ellerbee was "in the wrong place at the wrong time," the "mere presence" instruction was required. Ellerbee primarily argues that under State v. Chafee , 2014 MT 226, 376 Mont. 267, 332 P.3d 240, and Fleming v. State , 373 Md. 426, 818 A.2d 1117 (2003), a refusal to give a "mere presence" instruction fails to adequately inform the jury of the exercise of dominion, control, and knowledge required for criminal possession. Ellerbee contends that he was prejudiced by the District Court's denial of his "mere presence" instruction.
¶29 The State responds that Ellerbee offered no meaningful theory to the District Court about why it should instruct on "mere presence." The State argues that the circumstances of Chafee are inapposite to Ellerbee's case and fail to provide a basis for a "mere presence" instruction. The State argues Ellerbee's cited cases from other jurisdictions are likewise distinguishable from the facts and circumstances of this case. We agree.
¶30 In Chafee , the defendant was charged with arson by accountability after she had been present when her boyfriend broke into a car and lit it on fire. Chafee , ¶ 7. Defense counsel failed to offer a "mere presence" jury instruction after having argued that mere presence was insufficient to establish that the defendant was involved in the crime. Chafee , ¶ 15. We held that defense counsel's failure to offer such a "potentially beneficial instruction" constituted deficient performance. Chafee , ¶ 21. We explained that "mere presence at the scene of a crime is not enough to establish accountability, [although] the accused need not take an active part in any overt criminal acts to be adjudged criminally liable for the acts." Chafee , ¶ 20 (citing State v. Miller , 231 Mont. 497, 511, 757 P.2d 1275, 1284 (1988) (quoting State v. Bradford , 210 Mont. 130, 142, 683 P.2d 924, 930 (1984) ).
¶31 In Fleming , officers arrested the defendant after finding a bag filled with vials of cocaine near the defendant. Fleming , 818 A.2d at 1120. At the close of evidence in the defendant's trial, defense counsel asked the court to instruct the jury on mere presence, which the trial court refused. Fleming , 818 A.2d at 1120. The defendant was later convicted of possession with intent to distribute. Fleming , 818 A.2d at 1120. The Maryland Court of Appeals reversed and concluded that the evidence presented at trial was sufficient to require the "mere presence" instruction. Fleming , 818 A.2d at 1121. The Maryland Court of Appeals determined that the trial court failed to explain to the jury that "along with the requirement of the ability to exercise dominion and control, knowledge is an element of the offense of possession of a controlled dangerous substance." Fleming , 818 A.2d at 1125 (emphasis ***299 added and citation omitted). "The purpose of a mere presence instruction ... is to inform the jury that simply because the defendant was in close proximity to the drugs in question, [the jury] may not infer knowledge and intent to exercise dominion and control from that fact alone." Fleming , 818 A.2d at 1125 (citation omitted).
¶32 The District Court did not abuse its discretion by denying Ellerbee's request for a "mere presence" instruction. The District *917 Court properly instructed the jury that Ellerbee had to knowingly possess the drugs. The District Court also instructed the jury on the respective definitions of "knowingly," "possession," and "dangerous drugs"-sufficiently covering the requirements for a conviction on criminal possession.
¶33 The District Court fully and fairly instructed the jury on the applicable law on criminal possession of dangerous drugs. See Polak , ¶ 25 ; Kaarma , ¶ 26 ; Sheehan , ¶ 33. The District Court had the authority to instruct in this way, rather than give Ellerbee's "mere presence" instruction, because it is afforded broad discretion in formulating and approving jury instructions. See Polak , ¶ 25 ; Kaarma , ¶ 7 ; Spotted Eagle , ¶ 6. Based upon the evidence presented at trial, and the instructions provided, Ellerbee cannot demonstrate that the District Court's refusal to give his "mere presence" instruction affected his substantial rights and constituted reversible error. See Polak , ¶ 25 ; Kaarma , ¶ 7 ; Spotted Eagle , ¶ 6.
¶34 Issue Three: Whether the District Court abused its discretion by overruling Ellerbee's hearsay objection regarding his traveling companions' statements to officers during Ellerbee's second jury trial.
¶35 Montana Rule of Evidence 801(c) provides, "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See State v. Mont. Ninth Judicial Dist. Court , 2014 MT 188, ¶ 9, 375 Mont. 488, 329 P.3d 603 (citing State v. Losson , 262 Mont. 342, 348, 865 P.2d 255, 258-59 (1993) ). Hearsay is not admissible in court, except as otherwise provided by statute, the Montana Rules of Evidence, or other rules applicable in the courts of this State. See Mont. Ninth Judicial Dist. Court , ¶ 9 (citing M. R. Evid. 802 ; State v. Hardman , 2012 MT 70, ¶ 31, 364 Mont. 361, 276 P.3d 839 ). A statement is hearsay "only when the immediate inference the proponent wants to draw is the truth of the assertion on the statement's face." City of Billings v. Nolan , 2016 MT 266, ¶ 28, 385 Mont. 190, 383 P.3d 219 (quoting Siebken v. Voderberg , 2015 MT 296, ¶ 22, 381 Mont. 256, 359 P.3d 1073 ).
***300 ¶36 We have held that a district court abused its discretion when it admitted officer testimony regarding a defendant's passengers' inconsistent statements for the truth of the matter asserted. State v. Runs Above , 2003 MT 181, ¶ 23, 316 Mont. 421, 73 P.3d 161. In Runs Above , the defendant was accused of attempting to break into a car that was disabled on the side of the road. Runs Above , ¶¶ 5-11. At trial, an officer who interviewed two of the defendant's passengers repeated the passengers' inconsistent statements concerning why they were present at the disabled vehicle with the defendant. Runs Above , ¶ 18. The district court ruled that neither of the passengers' statements were offered for the truth of the matter asserted. Runs Above , ¶ 19. We reversed and held that the statements amounted to inadmissible hearsay because they had been offered to prove that the defendant was attempting to break into the car. Runs Above , ¶ 21.
¶37 During Ellerbee's second trial, the District Court allowed officer testimony concerning Santos's and Phillips's conflicting statements regarding their relationship to Sandy over Ellerbee's hearsay objection. Ellerbee argues in this appeal that under Runs Above , the District Court abused its discretion in admitting the officer testimony. Ellerbee argues the statements were offered for the truth of the matter asserted: to substantiate that Ellerbee, Santos, and Phillips destination in Spokane was Sandy's house to obtain methamphetamine, and that Sandy was connected to the texts on Ellerbee's phone.
¶38 The State argues that Runs Above is distinguishable, and that the District Court did not abuse its discretion in admitting the officer's testimony. The State argues that the statements were relevant for their inherent inconsistencies, and not because they went to the truth of the matter asserted. The State argues that because it did not need to prove that Sandy was a casual friend, a close friend, or a family member, the statements were not offered for the truth of the matter asserted. We agree.
*918 ¶39 Santos's and Phillips's conflicting statements were not offered for the truth of the matter asserted. The plain meaning of Santos's and Phillips's statements concerned whether Sandy was a family member or close friend of Ellerbee, Santos, and Phillips and not whether the trio had met with Sandy in Spokane to purchase methamphetamine. See Nolan , ¶ 28 ; Siebken , ¶ 22. Therefore, Santos's and Phillips's statements regarding their relationship to Sandy constituted nonhearsay and were properly admitted. See M. R. Evid. 801(c) ; Mont. Ninth Judicial Dist. Court , ¶ 9 ; Runs Above , ¶¶ 21-23. The District ***301 Court did not abuse its discretion in admitting the statements. See Kaarma , ¶ 11 ; Duffy , ¶ 43.
¶40 Issue Four: Whether cumulative trial error requires reversal.
¶41 Where individual errors would be insufficient alone to serve as a basis for reversal, the sum of those errors can nevertheless serve as a basis for reversal under the cumulative error doctrine. State v. Cunningham , 2018 MT 56, ¶ 32, 390 Mont. 408, 414 P.3d 289 (citing Kills on Top v. State , 279 Mont. 384, 392, 928 P.2d 182, 187 (1996) ). The cumulative error doctrine requires reversal where numerous errors, "when taken together, have prejudiced a defendant's right to a fair trial." Cunningham , ¶ 32 (quoting Hardman , ¶ 35 ).
¶42 Ellerbee argues that the District Court committed multiple errors across his two trials, which taken together, warrant reversal in this matter. The State argues that since there was no error in either of Ellerbee's trials, the cumulative error doctrine does not apply.
¶43 Ellerbee fails to establish that the District Court erred during either of his trials. The District Court correctly denied Ellerbee's Motion for Directed Verdict, properly exercised its discretion in refusing the "mere presence" jury instruction, and the admission of Santos's and Phillips's inconsistent statements about Sandy did not constitute hearsay. Therefore, there was no cumulative error or resulting prejudice to Ellerbee's right to a fair trial. See Cunningham , ¶ 32 ; Hardman , ¶ 35 ; Kills on Top , 279 Mont. at 392, 928 P.2d at 187.
CONCLUSION
¶44 The District Court properly exercised its discretion in denying Ellerbee's Motion for Directed Verdict. The District Court correctly instructed the jury on the charge of criminal possession of dangerous drugs, and did not abuse its discretion by denying Ellerbee's requested instruction on "mere presence." The District Court properly admitted Santos's and Phillips's statements regarding their relationship to Sandy. There was no cumulative error that would require reversal of Ellerbee's conviction. We affirm.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
JIM RICE, J.

"Although [the defendant] frames the issue as a double jeopardy issue under Article II, Section 25 of the Montana Constitution, we have repeatedly recognized that courts should avoid constitutional issues whenever possible." State v. Russell , 2008 MT 417, ¶ 19, 347 Mont. 301, 198 P.3d 271 (citation and internal quotations omitted).

The District Court instructed the jury that possession was defined as:
Possession means the knowing control of anything for a sufficient time to be able to terminate control. Possession of dangerous drugs may be either "actual or constructive." Actual possession means that the Defendant had personal custody of the drugs. Constructive possession means that the drugs are not in the actual physical possession, but that the Defendant has dominion and control over the drugs or the joint dominion and control of the drugs with another.
(Emphasis added).