FILED

12/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0453

DA 22-0453

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 310N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BRIAN ROBERT BENEDICT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-21-49
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Penelope S. Strong, Attorney at Law, Billings, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

      Marcia Jean Boris, Lincoln County Attorney, Libby, Montana

            Submitted on Briefs:  August 28, 2024

            Decided:  December 17, 2024

Filed:

                     _____
                                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Brian Robert Benedict (Benedict) appeals from the June 24, 2022 Judgment and Sentence issued by the Nineteenth Judicial District Court, Lincoln County. We affirm.

¶3 In 2013, Benedict suffered a traumatic brain injury. As a result of the TBI, Benedict was diagnosed with neurocognitive impairment, and he suffers from delusions and psychotic symptoms. Benedict was suffering from delusions that he was a biblical figure named "Boaz Benjamin" in the spring of 2021. His wife obtained a restraining order and a neighbor obtained a no trespass order due to the actions and comments of Benedict during this time.

¶4 On May 10, 2021, Benedict attacked his father, Brad Benedict (Brad), with a knife while at Brad's property near Eureka. While walking towards a hangar to get gardening tools, Benedict grabbed Brad from behind, put a knife to Brad's throat, and told Brad, "[s]orry, but you have to die." Brad was able to deflect the knife from cutting his throat and the two engaged in a fight. Brad was eventually able to grab the knife and throw it into some brush near the hangar. Benedict and Brad continued in a fist fight until Brad

2

was able to get in his vehicle and drive away. Officers responded to a 911 call about the incident, spoke with both Benedict and Brad, and arrested Benedict.

¶5 On May 18, 2021, Benedict was charged with felony Assault with a Weapon and misdemeanor Partner or Family Member Assault (PFMA) in the District Court. Upon Benedict's motion, the District Court found he was not fit to proceed and committed him to the Montana State Hospital (MSH) for the purpose of restoring his fitness to proceed on June 16. On October 22, the State filed a Motion for Order Determining that Defendant is Fit to Proceed based upon the MSH report by Dr. Laura Kirsch and Dr. Virginia Hill. The District Court set a hearing on the State's motion. Following the hearing on November 12, the District Court issued its Order Finding Defendant Regained Fitness to Proceed.

¶6 The matter went to trial beginning on May 3, 2022. The District Court held a pretrial conference in chambers on the morning of May 3. During that conference, counsel for Benedict asked the court for a ruling that any evidence of Benedict's use of drugs or alcohol not be mentioned at trial. Counsel for Benedict noted that both Benedict and Brad were questioned by the responding officer about whether Benedict was on drugs or alcohol during the May 10, 2021 incident and both indicated he was not and that Dr. Kirsch also had no evidence Benedict was on drugs or alcohol so it did not "factor into her decision as to whether he could form those mental states." The State indicated it did not intend to elicit any testimony regarding drugs or alcohol as it was not a significant issue in the case but was "wary of the possibility that if somebody mentions anything to do with drugs or alcohol, or that there is a question by the defense, that all of a sudden we are going to have some kind of a problem there." The District Court granted Benedict's motion, stating "to

3

the extent that it involves any sort of investigation, or anything like that, there shouldn't be any mention of it, not during voir dire, or openings, or anything like that." The court further noted it would make a more specific ruling "as it pertains to Dr. Kirsch and her testimony before she testifies" and told the parties to "make sure that nobody does mention it[.]"

¶7 During the State's voir dire, a prospective juror, unprompted, asked the State's counsel whether "there [was] any alcohol or drugs involved" in the case. The State responded that "we don't get to talk about everything" and reminded the jurors they were to look at the evidence and decide what factors were present. Benedict objected to the State's answer, which the District Court overruled. Outside the presence of the jury, Benedict moved for a mistrial due to the State's response. The District Court denied the motion, reasoning the State had handled responding to the unsolicited comment about as well as it could have.

¶8 At trial, the jury heard the testimony of Brad, Dr. Kirsch, and Lincoln County Sheriff's Deputy Clint Heintz. During Brad's testimony, while talking about Benedict's "Boaz Benjamin" delusion, the following exchange occurred while Benedict's counsel was questioning Brad:

Q. Okay. So do you believe—do you think that he genuinely believes these things that he was Boaz Benjamin and he was on some type of holy mission?

A. I don't know what he thought.

Q. Do you feel like this was something that he had control over, given what he did on May 10th?

A. If he didn't drink and do drugs, and took care of himself, and stayed off Monster drinks, and got some sleep and rest and took care of himself, ate healthy, he can control it.

4

Q. Objection to that answer, Judge.

THE COURT: Overruled.

Q. So I'll ask again, do you feel that this was something that he had control over given his circumstances on May 10th?

A. It's hard to say. If he was taking care of himself, he can control it. If he's running himself into the ground with drugs and alcohol, Monster drinks and no rest, then he's gonna lose control. He's going to come off the rails like he did.

Benedict asked to be heard outside of the presence of the jury and again moved for a mistrial. Benedict asserted the State should have better communicated the District Court's order that drugs and alcohol were not supposed to be brought up during trial to Brad before he testified. The State contended it was Benedict's own questioning which brought about Brad's response and that it didn't "think that they can object to their own question when they've asked him for his own belief or opinion on the matter." After taking the matter under advisement until the close of testimony, the District Court ultimately denied Benedict's second motion for mistrial, finding there was insufficient prejudice to warrant a mistrial and that "the record is clear as to what Bradley Benedict was testifying to. And I think likewise the record is clear that Mr. Brian Benedict was not under the influence of anything that day, and that nobody is alleging or saying that he was."

¶9 Following Brad's testimony, Dr. Kirsch testified about her mental fitness examination of Benedict. Dr. Kirsch recounted that, while Benedict had been using drugs and alcohol since his TBI, he had not used either in the two weeks prior to his attack on Brad. During the State's cross-examination, the following exchange occurred:

5

Q. [And] that was your conclusion here that although the Defendant here, Mr. Benedict, suffers from some mental illness, he was able to act purposely or knowingly at the time of the offense, is that correct?

A. That's correct.

Q. And so that just has to do with whether he could form the mental state that is required as an element of the offense, i.e. purposely or knowingly, right?

A. Right. So he had to have the knowledge and purpose to know that, you know, that he's a person, and that his father is a person who is his father, and that if you use a knife on someone it can cause injury. Right? That's essentially knowledge, which I believe he had based on his immediate statements to the police when he was arrested.

[Benedict's counsel]: Objection. That goes to the ultimate issue in the case.

The District Court sustained Benedict's objection and told the jury, "[w]hether or not this particular Defendant had knowledge or purpose is an ultimate issue for you to decide. This witness cannot provide that to you. You are to disregard any testimony as to whether or not this Defendant had that. Her testimony is relevant only to the ability or the capacity, not whether it was actually present, that will be your decision." Immediately following the court's ruling, the following exchange occurred between the State and Dr. Kirsch:

Q. So based on your evaluation, and all of those materials that you considered, you concluded that Mr. Benedict retained the ability to act with knowledge and purpose, is that correct?

A. Yes.

Q. And the behavior that he exhibited after the assault indicated to you that he acted purposely or knowingly, is that correct?

THE COURT: Stop. I believe that is an objectionable question as to whether he did. As I said, the witness can testify as to the ability and the capacity, not whether or not it was present. Next question.

6

[Prosecutor]: Nothing further.

Dr. Kirsch was thereafter excused. Benedict did not move for a mistrial at this time. After his second motion for mistrial (regarding Brad's testimony) was denied following the close of testimony, however, Benedict made his third mistrial motion based on the prosecutor's question to Dr. Kirsch. The District Court denied Benedict's third motion for mistrial, noting "there was an objection to the answer given by the doctor. That answer—there was nothing wrong with the question that was asked. It was the answer that was given by the doctor that was objected to and I sustained the objection and gave a curative instruction to the jury. No further testimony was given with respect to the issue at hand and, yes, there was a question that was asked and I, without objection, stopped the doctor from answering that." The court found there was not sufficient prejudice with respect to the State's unanswered question to warrant a mistrial.

¶10 The jury found Benedict guilty of both Assault with a Weapon and PFMA. The District Court held a sentencing hearing on June 20, 2022. At that hearing, the court found Benedict suffered from a mental disease or defect and was "unable to appreciate the criminality of his conduct and conform his behavior therewith" at the time of the May 10, 2021 incident and a commitment to the Department of Public Health and Human Services (DPHHS) was appropriate. The court sentenced Benedict to a 10-year DPHHS commitment, with 5 years suspended, for assault with a weapon and to a concurrent 1-year suspended sentence to the Lincoln County Detention Center for PFMA. The District Court's written Judgment and Sentence was issued on June 24, 2022.

7

¶11 Benedict appeals. We consider the following restated issues on appeal: (1) whether the District Court abused its discretion by denying Benedict's third motion for mistrial, and (2) whether Benedict's conviction should be reversed under the cumulative error doctrine.

¶12 We review the denial of a motion for a mistrial to determine whether the district court abused its discretion. *State v. Denny*, 2021 MT 104, ¶ 13, 404 Mont. 116, 485 P.3d 1227 (citing *State v. Gunderson*, 2010 MT 166, ¶ 91, 357 Mont. 142, 237 P.3d 74). "An abuse of discretion occurs when the district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Zimmerman*, 2018 MT 94, ¶ 13, 391 Mont. 210, 417 P.3d 289 (citing *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45).

¶13 On appeal, Benedict asserts his third motion for mistrial should have been granted due to "egregious prosecutorial misconduct." The basis for Benedict's assertion is the State's question to Dr. Kirsch, "And the behavior that he exhibited after the assault indicated to you that he acted purposely or knowingly, is that correct?" This question came after Benedict objected to an answer given by Dr. Kirsch regarding Benedict's mental state. The District Court sustained the objection and issued a curative instruction informing the jury to disregard any testimony as to whether or not Benedict had a specific mental state because that was a question for the jury to decide and Dr. Kirsch could not provide that for them. The court further informed the jury that Dr. Kirsch's "testimony is relevant only to the ability or the capacity, not whether it was actually present, that will be your decision." The State's later question to Dr. Kirsch went unanswered as the District Court interjected

8

before she could answer and again reminded the jury that "the witness can testify as to the ability and the capacity, not whether or not it was present."

¶14    In reviewing the denial of a motion for a mistrial, we apply "a deferential standard to the district court because the trial judge is in the best position to decide on the motion." *State v. Krause*, 2021 MT 24, ¶ 11, 403 Mont. 105, 480 P.3d 222 (citation omitted). "A mistrial is an extreme remedy and may only be granted for manifest necessity as required by the ends of justice." *Denny*, ¶ 13 (citing *State v. Flores*, 1998 MT 328, ¶ 11, 292 Mont. 255, 974 P.2d 124).

¶15    We find no abuse of discretion in the District Court's decision to deny Benedict's third motion for mistrial in this case. Even if the State's unanswered question to Dr. Kirsch may have been improper, it did not rise to the level of "egregious prosecutorial misconduct" as asserted by Benedict and, in any event, Benedict was not prejudiced as the District Court acted promptly by interjecting to immediately end the State's line of questioning and remind the jury that Dr. Kirsch could only "testify as to the ability and the capacity [of Benedict to act purposely and knowingly], not whether or not it was present." In addition, the jury heard significant testimony regarding Benedict's ability to act purposely or knowingly and his delusional state at the time of his attack on Brad. The "extreme remedy" of a mistrial is not warranted in this case.

¶16    We turn now to whether cumulative trial error requires reversal of Benedict's conviction. "The cumulative error doctrine mandates reversal of a conviction where numerous errors, when taken together, have prejudiced a defendant's right to a fair trial." *State v. Hardman*, 2012 MT 70, ¶ 35, 364 Mont. 361, 276 P.3d 839 (citing *State v.*

9

*Giddings*, 2009 MT 61, ¶ 100, 349 Mont. 347, 208 P.3d 363). "The defendant must establish prejudice; a mere allegation of error without proof of prejudice is inadequate to satisfy the doctrine." *State v. Cunningham*, 2018 MT 56, ¶ 32, 390 Mont. 408, 414 P.3d 289 (citing *McGarvey v. State*, 2014 MT 189, ¶ 36, 375 Mont. 495, 329 P.3d 576). Reversal is rarely warranted for cumulative error. *Cunningham*, ¶ 33 (citation omitted).

¶17 Benedict asserts cumulative error applies in this case because of the denial of his second and third motions for mistrial. As we have already explained, the District Court correctly denied the third motion for mistrial regarding the State's question to Dr. Kirsch. And as to the second motion for mistrial, regarding Brad's testimony bringing up Benedict's previous use of drugs and alcohol in response to Benedict's own questioning, there is again no abuse of discretion in the court's denial of that motion. Brad's response regarding drugs, alcohol, and lack of sleep was brought on by Benedict's own questioning. After Benedict objected to Brad's initial response, which the District Court overruled, Benedict again asked virtually the same question, prompting Brad to offer essentially the same response. Benedict cannot prove he was prejudiced due to Brad's responses to his own questioning or that the prosecutor committed misconduct by not better preparing Brad for Benedict's cross-examination. Benedict provides no analysis of the District Court's denial of his first motion for mistrial, regarding the State's answer to a prospective juror's unprompted question about drugs and alcohol, beyond mentioning it in the factual background of his brief, but again, the court did not abuse its discretion in denying that motion because the prosecutor did not commit any misconduct in responding to the unprompted question from the prospective juror. In this case, there was no cumulative

error or resulting prejudice to Benedict's right to a fair trial. *See State v. Ellerbee*, 2019 MT 37, ¶ 43, 394 Mont. 289, 434 P.3d 910. The cumulative error doctrine therefore does not apply.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE